632 A.2d 989

**BELTRAMI ENTERPRISES, INC., Booty's Mining Company, Inc. and Beltrami Brothers Real Estate, a Pennsylvania Limited Partnership, Appellants,**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT of ENVIRONMENTAL RESOURCES.**

Commonwealth Court of Pennsylvania.

Argued Sept. 15, 1993.

Decided Oct. 13, 1993.

---

74

Lawrence M. Klemow, for appellants.

Janice J. Repka, Asst. Counsel, for appellee.

Before FRIEDMAN and KELLEY, JJ., and NARICK, Senior Judge.

NARICK, Senior Judge.

Beltrami Enterprises, Inc., Booty's Mining Company, Inc. and Beltrami Brothers Real Estate (collectively, Appellants) appeal from the order of the Court of Common Pleas of Schuylkill County that sustained the Department of Environmental Resources' (DER) objections to the petition for the appointment of viewers filed by Appellants.

On December 17, 1974, Booty's Mining acquired 600 acres in Kline Township, Schuylkill County. This purchase included the 340–acre Kelayres Strip Mine, (abandoned mine). The abandoned mine had spoil banks consisting of piles of culm, silt, rock, coal and other materials adjacent to the highwall. A few years later, Booty's Mining merged with Beltrami Enterprises and Beltrami Brothers Real Estate, entering into a written lease agreement for the purpose of operating a stone quarry on the property adjacent to the abandoned mine. Appellants would use the surface rock from the abandoned mine's spoil bank in the operation of the stone quarry. Appellants applied to the DER for a non-coal surface mining operator's license and permit which the DER granted in 1986. Appellants repeatedly renewed the license application; however, the quarry never began operation.

On December 23, 1988, the DER's Deputy Secretary for Resources Management informed Appellants that the DER intended to enter the land on which the abandoned mine was located and reclaim it pursuant to Section 16(a)(1) of the Land and Water Conservation and Reclamation Act, Act of January 19, 1968, P.L. (1967) 996, *as amended,* 32 P.S. § 5116(a)(1), Section 407 of the Act of August 3, 1977 (popularly known as the Surface Mining Control and Reclamation Act of 1977), 30 U.S.C. § 1237, and Section 1917–A of The Administrative Code of 1929, Act of April 9, 1929, P.L. 177, *as amended,* added by the Act of December 3, 1970, P.L. 834, 71 P.S. § 510–17.

Appellants resisted the DER's proposed reclamation, filing a timely notice of appeal with the Environmental Hearing Board (EHB). The primary thrust of the appeal was that the DER's action was an unlawful taking in that it did not provide Appellants compensation for the surface rock DER planned to use to fill the abandoned mine. Appellants asserted that because it had planned to quarry the rock that it was entitled to compensation. In 1989, the DER commenced reclamation using the surface rock to fill the abandoned strip mine.[1]

On May 15, 1992, Appellants filed a petition for appointment of a board of viewers under Section 502(e) of the Eminent Domain Code (Eminent Domain Code), Act of June 22, 1964, P.L. 84, 26 P.S. § 1–502, with the trial court. On the same date Appellants filed a petition to stay its action before the EHB until the trial court ruled on its claim for compensation under the Eminent Domain Code.

The EHB granted the stay; however, the DER opposed the petition for appointment of viewers contending that jurisdiction was with the EHB. Ruling on Appellants' petition, the trial court made two inconsistent holdings: 1) that the DER's action was not an eminent domain taking but an exercise of the Commonwealth's police power; and 2) that Appellants' request for appointment of viewers was not ripe because Appellants had failed to exhaust its administrative remedies before the EHB, adding that the "eminent domain action [was] not cognizable until a determination had been made by the Environmental Hearing Board." (55a).

On appeal, Appellants argue that the trial court erred in: 1) determining without a factual basis that the DER's actions constituted an exercise of the police power; 2) determining that the EHB ·had primary jurisdiction; and 3) treating DER's response to the petition for appointment of viewers as preliminary objections.

1. Appellants have alleged that some of the surface rock the DER planned to use in its reclamation was located on its adjacent property and not on the abandoned mine site. However, this fact is not clear from the record before us.

██ Appellants first argue that the trial court erred in concluding that the DER's actions constituted an exercise of police power without a factual basis. Appellants had merely filed a petition for an appointment of viewers. In eminent domain proceedings, a court confronted with a petition for an appointment of viewers alleging a *de facto* taking which is objected to, must first decide as a matter of law, whether the averments of the petition, taken as true, are sufficient to state a cause of action. If the averments might establish a *de facto* taking, the trial court must then take evidence by deposition or otherwise, in order that a judicial determination can be made. *Appeal of Krauss,* 151 Pa.Commonwealth Ct. 619, 618 A.2d 1070 (1992). The trial court here did not take any evidence on the takings issue but still determined, on the merits, that the Commonwealth had exercised its police power. We hold that the trial court improperly concluded, without a factual basis, that the DER's actions were not a taking but fell under the Commonwealth's police power. Therefore, on this issue, we reverse.

██ Appellants next argue that the trial court erred in determining that the EHB had primary jurisdiction. The Doctrine of Primary Jurisdiction allows a court to defer judicial action until an administrative agency has passed upon such aspects of a proceeding as may lie with the agency's competence and expertise. *Jackson v. Centennial School District,* 509 Pa. 101, 501 A.2d 218 (1985). The purpose of the doctrine is to create "a workable relationship between the courts and administrative agencies wherein, in appropriate circumstances, the courts can have the benefit of the agency's views on issues within the agency's competence." *Elkin v. Bell Telephone Co. of Pennsylvania,* 491 Pa. 123, 131–32, 420 A.2d 371, 376 (1980). In Pennsylvania, as in other jurisdictions, this reconciliation between the administrative agencies and the judiciary is accomplished by staying the judicial action until the agency has passed on those issues that are within its competence and are collateral to issues before the court. *E.L.G. Enterprises Corp. v. Gulf Oil Co.,* 291 Pa.Superior Ct. 414, 435 A.2d 1295 (1981).

■ Under the doctrine of primary jurisdiction, in determining whether or not a court should refrain from exercising its jurisdiction until after an administrative agency has determined some question or aspect of the proceeding, the Supreme Court in *Elkin* indicated that a court should consider: 1) the benefits to be gained by relying upon the agency's special experience and expertise in a complex area; 2) the statutory purpose in creating the agency; and 3) the fundamental administrative policy. *Elkin.*

With this in mind, we shall turn to the language of the Eminent Domain Code. Section 303 of the Eminent Domain Code, 26 P.S. § 1–303, provides the "exclusive" procedure to govern condemnations of property and the assessments of damages. Under Section 401 of the Eminent Domain Code, 26 P.S. § 1–401, jurisdiction for all condemnation proceedings lies in the court of common pleas for the county in which the property is located.

The Eminent Domain Code does not apply only to those instances where the property has been formally condemned. Section 502(e) of the Eminent Domain Code provides that a condemnee may petition for an appointment of viewers if there has been a "compensable injury" and "no declaration of taking therefore has been filed." We consider such a taking a "de facto taking."

However, where an entity has power of eminent domain, but the alleged taking does not result, those injured must seek their recourse by some other vehicle other than the Eminent Domain Code. Persons who allege that their property has been "taken" by changes in zoning regulations have no recourse under the Eminent Domain Code, despite the fact that townships [2] as well as counties and boroughs [3] have the power

2. *See e.g.* Sections 1901 and 3001 of The First Class Township Code, Act of June 24, 1931, P.L. 1206, *as amended,* 53 P.S. §§ 56901, 58001; and Sections 1001–1053 of The Second Class Township Code, Act of May 1, 1933, P.L. 103, *as amended,* 53 P.S. §§ 66001–66053.

3. *See e.g.,* Section 2305(a) of the County Code, Act of August 9, 1955, P.L. 323, *as amended,* 16 P.S. § 2305(a); Section 2505(a) of the Second Class County Code, Act of July 28, 1953, P.L. 723, *as amended,* 16 P.S.

of eminent domain. Where property owners assert, for example, that flood plan ordinances restricting the use of their property constitutes a taking, we have held that their only recourse lies in the Municipalities Planning Code. *See Merlin v. Commonwealth*, 72 Pa.Commonwealth Ct. 45, 455 A.2d 789 (1983); *Gaebel v. Thornbury Township*, 8 Pa.Commonwealth Ct. 399, 303 A.2d 57 (1973).

■ Section 17 of the Coal Refuse Disposal Control Act, Act of September 24, 1968, P.L. 1040, *as amended*, 52 P.S. § 30.101, gives the DER the power of eminent domain. Section 4 of the Environmental Hearing Board Act, Act of July 13, 1988, P.L. 530, 35 P.S. § 7514, specifically empowers the EHB to adjudicate disputes arising from orders issued by the DER. The EHB has the power to resolve both the procedural and substantive validity of actions by the DER. *Charleston Township Municipal Authority v. Department of Environmental Resources*, 29 Pa.Commonwealth Ct. 127, 370 A.2d 758 (1977). Thus, the sole question here is whether or not the Eminent Domain Code or the EHB can determine whether the DER's action was a taking, requiring compensation.

In referring to the argument that the Eminent Domain Code deprives the EHB of jurisdiction to consider taking issues, the EHB in *Mock v. Department of Environmental Resources*, 1992 E.H.B. 537, *aff'd*, 154 Pa.Commonwealth Ct. 380, 623 A.2d 940 (1993), wrote:

This argument is persuasive on its face, but ignores appellate court decisions construing the Eminent Domain Code. The seminal case, *Gaebel v. Thornbury Township*, [8 Pa.Commonwealth Ct. 399, 303 A.2d 57 (1973) ], held that a claim for *de facto* taking cannot be filed under the Eminent Domain Code where the taking power involves the exercise of the police power. The property owner must first challenge the constitutionality of that exercise by the means provided by the Legislature. In the case of a zoning ordinance, as was involved there, the challenge must be

§ 5505(a); and Section 1501 of the Borough Code, Act of February 1, 1966, P.L. 1656, *as amended*, 53 P.S. § 46501.

made through procedures contained in the Municipalities Planning Code.

\* \* \* \* \* \*

Any claim that the exercise of that power by the DER amounts to an unconstitutional taking of property must be pursued through the procedures contained in the statute—appeal to this board: 32 P.S. § 693.24(a). We clearly have the jurisdiction to consider it.

Also in *Machipongo Land and Coal Co. v. Department of Environmental Resources*, 155 Pa.Commonwealth Ct. 72, 624 A.2d 742 (1993), we held that a petition for review of the designation by the Environmental Quality Board of certain lands as unsuitable for mining under 25 Pa.Code § 86.-130(b)(14), was properly transferred to the EHB under the Doctrine of Primary Jurisdiction.

In a case concerning two acts with potential overlapping jurisdiction, *Department of Environmental Resources v. Burr*, 125 Pa.Commonwealth Ct. 475, 557 A.2d 462 (1989), the issue was whether the EHB or the Board of Claims had jurisdiction where the Coal and Clay Mine Subsidence Insurance Board, a division of the DER, denied claims on mine subsidence insurance policies issued under subscription to the Mine Subsidence Fund Act.[4] Section 3 of the Board of Claims Act, Act of May 20, 1937, P.L. 728, *as amended*, 72 P.S. §§ 4651–4, provides, in pertinent part, that "[t]he Board of Claims shall have exclusive jurisdiction to hear and determine all claims against the Commonwealth arising from contracts hereafter entered into with the Commonwealth. . . ." Section 24 of the Coal and Clay Mine Subsidence Insurance Fund Act, Act of August 23, 1961, P.L. 1068, *as amended*, 52 P.S. § 3224.1, provides that "[a]ny party aggrieved by an action of the [Subsidence Board] hereunder shall have the right to appeal to the Environmental Hearing Board." Despite the exclusivity language of the Board of Claims Act, we concluded that the EHB did have jurisdiction to hear the appeal from the order of the DER.

4. Act of August 23, 1961, P.L. 1068, *as amended*, 52 P.S. §§ 3201–3226.

The jurisdictional provisions of the Environmental Hearing Board Act and the Eminent Domain Code can be reconciled so as to give both effect in this case. The Environmental Hearing Board Act gives the EHB jurisdiction over appeals which, *inter alia*, raise constitutional challenges to an order of the DER based upon takings-related analysis and empowers the EHB to adjudicate the lawfulness of those orders and to set them aside if they amount to unconstitutional takings. The jurisdiction of the courts of common pleas under the Eminent Domain Code might then be invoked in order to determine the amount of damages, if any, that might have occurred as a result of the taking while it was ongoing.

■ It is irrelevant that the EHB does not have the power to award damages. Whether a court has been empowered to hear or adjudicate a controversy and whether a court has the power to grant the particular relief sought in a case are separate and distinct questions.

> [E]ven though a plaintiff have no standing to bring his action, even though his complaint be demurrable, even though he fail to establish its allegations, even though the court should finally conclude that the relief he seeks should not be granted, not any or all of these circumstances would enter into, much less determine, the question whether the court had jurisdiction of the litigation.

*Sperry & Hutchinson Co. v. O'Connor*, 488 Pa. 340, 345, 412 A.2d 539, 541 (1980) (quoting *Studio Theaters, Inc. v. City of Washington*, 418 Pa. 73, 77, 209 A.2d 802, 804 (1965)).

■ That fact that the EHB may ultimately decide that the Appellants here may not be entitled to redress or that the EHB may not be able to afford the relief sought is of no moment to the determination of jurisdiction. *Pennsylvania Coal Co. v. Luzerne County*, 390 Pa. 143, 134 A.2d 657 (1957).

■ Therefore, we hold that the trial court properly determined that the EHB had exclusive jurisdiction to determine

whether or not a taking had occurred.[5]  We reverse the trial court in concluding without a factual basis that the DER's actions were not a taking but fell under the Commonwealth's police power.

Accordingly, we affirm in part and reverse in part.

## ORDER

AND NOW, this 13th day of October, 1993, the order of the Court of Common Pleas of Schuylkill County in the above-captioned matter is affirmed in part and reversed in part.

FRIEDMAN, J., concurs in result only.

---

5. Appellants also argue that the trial court erred in treating DER's opposition to the petition for appointment of board of viewers and request for stay as preliminary objections.  Appellants argue that DER failed to raise any legal issues upon which preliminary objections could be granted under the Eminent Domain Code.  The Eminent Domain Code provides that preliminary objections shall be the exclusive method of making certain challenges which the DER did not make.  However, because the trial court determined that the EHB had primary jurisdiction and that Appellants did not exhaust their administrative remedy, the trial court merely relinquished jurisdiction.  Therefore, we hold that the trial court's ruling on DER's opposition to the petition for appointment of viewers was proper.