676 A.2d 199

MACHIPONGO LAND AND COAL COMPANY,
INC., the Victor E. Erickson Trust, and
Joseph Naughton, Appellants,

v.

COMMONWEALTH of Pennsylvania, DEPARTMENT OF ENVI-
RONMENTAL RESOURCES, the Environmental Quality
Board, and Arthur A. Davis, Secretary of Environmental Re-
sources, Appellees.

Supreme Court of Pennsylvania.

Reargued Jan. 24, 1996.

Decided May 21, 1996.

Carl A. Belin, Jr., Clearfield, Andrew H. Cline, Joel R. Burcat, Harrisburg, for Machipongo Land & Coal Co., Inc., etc.

Joseph G. Pizarchik and Richard P. Mather, Harrisburg, for Com. Dept. of Environmental Resources, etc.

Before NIX, C.J., and FLAHERTY, ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

### OPINION OF THE COURT

CASTILLE, Justice.

The sole issue raised on reargument before this Court is whether the Commonwealth Court or the Clearfield County Court of Common Pleas has jurisdiction over further proceedings concerning appellants' pre-enforcement challenges to an Environmental Quality Board ("EQB") regulation where there exists no adequate administrative remedy. For the reasons set forth below, we vacate our prior judgment remanding this case to the Clearfield County Court of Common Pleas, and now order that this case be remanded to the Commonwealth Court for further proceedings.

On October 11, 1994, this Court issued an opinion announcing the judgment of this Court as to several questions of jurisdiction over appellants' pre-enforcement challenges to an EQB regulation designating a portion of their land as unsuitable for surface mining. *See Machipongo Land & Coal Co., Inc. v. Department of Environmental Resources*, 538 Pa. 361, 648 A.2d 767 (1994) (*"Machipongo I "*). This Court first held that appellants were relieved from the general requirement of exhausting available administrative remedies since no adequate administrative remedy existed for their pre-enforcement

challenges. This Court then held that since there was no adequate administrative remedy available to appellants, the Commonwealth Court erred in transferring this case to the Environmental Hearing Board. Because there was no adequate administrative remedy available, this Court had to decide the proper judicial forum to adjudicate this matter.

Appellants argued that the taking of their land, which was done pursuant to the EQB regulation, amounted to a *de facto* taking. Since *de facto* takings are cognizable under the Eminent Domain Code, appellants reasoned that the Clearfield County Court of Common Pleas had jurisdiction over their pre-enforcement challenges since the Eminent Domain Code vests initial jurisdiction in the court of common pleas of the county in which the property is located. *See* 26 P.S. § 1–401. Appellees, however, did not address appellants' jurisdictional argument based on the Eminent Domain Code since they believed the focus of the appeal was on whether appellants had adequate administrative remedies for their claim. This Court sided with appellants' jurisdictional argument and thus, pursuant to the Eminent Domain Code, remanded appellants' pre-enforcement challenges to the Clearfield County Court of Common Pleas for further proceedings.[1]

Appellees then filed a petition pursuant to Rule 2543 of the Pennsylvania Rules of Appellate Procedure requesting this Court to hear reargument and reconsider only that part of our October 11, 1994 ruling remanding this case to the Clearfield County Court of Common Pleas. Appellees sought reargument because they believed that they were not afforded an opportunity to adequately address this jurisdictional issue since it was not the main focus of the earlier appeal before this Court. Appellees alleged in their reargument petition that this Court's reliance on the Eminent Domain Code to remand this matter was misplaced since appellants' pre-enforcement challenges concern a regulation promulgated pursuant to the Commonwealth's exercise of its police powers. Thus, Appellees argued that this case should have been remanded to the

1. For a more detailed analysis and explanation of these claims, see *Machipongo I, supra.*

Commonwealth Court since it falls within that court's original jurisdiction when there are no adequate administrative remedies available or they have been exhausted. Appellants opposed appellees' reargument petition because they believe this Court correctly relied on the Eminent Domain Code to remand the matter to the Clearfield County Court of Common Pleas. We granted reargument on October 24, 1995 in order to consider whether the distinction advanced by appellees in their petition for reargument affected the jurisdictional determination for this case. On January 24, 1996, the parties reargued the sole issue of whether the Commonwealth Court or the Clearfield County Court of Common Pleas should have jurisdiction over further proceedings in this case.

When considering whether the Commonwealth Court or the Clearfield County Court of Common Pleas has jurisdiction over appellants' pre-enforcement challenges for which there is no adequate administrative remedy, one must consider the statutory authority of the Commonwealth Court to assume original jurisdiction over certain cases. Section 761 of the Judicial Code, in pertinent part, provides:

(a) **General Rule**—The Commonwealth Court shall have original jurisdiction of all civil actions or proceedings:

(1) Against the Commonwealth government, including any officer thereof, acting in his official capacity, except:

(i) actions or proceedings in the nature of applications for a writ of habeas corpus or postconviction relief not ancillary to proceedings within the appellate jurisdiction of the court;

(ii) eminent domain proceedings;

(iii) actions or proceedings conducted pursuant to Chapter 85 (relating to matters affecting government units);

(iv) actions or proceedings conducted pursuant to the act of May 20, 1937 (P.L. 728, No. 193) referred to as the Board of Claims Act; and

(v) actions or proceedings in the nature of trespass as to which the Commonwealth government formerly en-

joyed sovereign or other immunity and actions or proceedings in the nature of assumpsit relating to such actions or proceedings in the nature of trespass.

42 Pa.C.S. § 761.

Here, appellants' action is against the Commonwealth government and its officers. *See CRY, Inc. v. Mill Service, Inc.,* 536 Pa. 462, 472, 640 A.2d 372, 377 (1994) (action in which the Department of Environmental Resources was joined as an indispensable party constitutes action against the Commonwealth government for purposes of Section 761 of Judicial Code). Thus, jurisdiction over appellants' pre-enforcement challenges will rest with the Commonwealth Court unless the claim falls within one of the exceptions enumerated in Section 761(a)(1).

In this case, the regulation challenged by appellants which designated a portion of their land as unsuitable for surface mining is found at 25 Pa.Code § 86.130(b)(14).[2] This regulation was promulgated under Section 4.5 of the Surface Mining Conservation and Reclamation Act ("SMCRA"), 52 P.S. § 1396.4e(a) and (b)(1) as well as Section 315 of the Clean Streams Law, 35 P.S. § 691.315(h) and (i)(1) and Section 6.1 of the Coal Refuse Disposal Control Act, 52 P.S. § 30.56a(a) and (b). Section 4.5 of the SMCRA states that:

> [P]ursuant to the procedure set forth in subsection (b), the department shall designate an area as unsuitable for all or certain types of surface mining operations as such operations as defined in Section 3, if the department determines that reclamation pursuant to the requirements of this act is not technologically and economically feasible.

52 P.S. § 1396.4e(a). Section 1 of the SMCRA states that "[t]his act shall be deemed to be an exercise of the police powers of the Commonwealth for the general welfare of the

**2.** Section 86.130(b)(14), in pertinent part, provides that: "the surface mineral coal reserves within the Goss Run watershed upstream of the Brisbin Dam, including a small tract of land within the watershed of the West Tributary to Goss Run, a total of approximately 555 acres, are designated unsuitable for all types of surface mining activities ..." 25 Pa.Code § 86.130(b)(14).

people of the Commonwealth." 52 P.S. § 1396.1. This language shows that the General Assembly clearly specified that the designation of an area as unsuitable for surface mining under these circumstances constitutes an exercise of the Commonwealth's police powers. Thus, appellants' challenges, on their face, do not concern one of the enumerated exceptions to the Commonwealth Court's jurisdiction.

Appellants, however, argue that their challenges fall within the eminent domain exception since the taking in this case amounts to a *de facto* taking, and *de facto* takings are cognizable under the Eminent Domain Code. In making this argument, appellants ignore what has long been an acknowledged distinction in this Commonwealth between a taking which occurs pursuant to the Commonwealth's exercise of its police powers and the exercise of its eminent domain power.

■ This Court, in *Appeal of White,* 287 Pa. 259, 134 A. 409 (1926), stated that:

[P]olice power should not be confused with that of eminent domain. Police power controls the use of property by the owner, for the public good, its use otherwise being harmful, while eminent domain and taxation take property for public use. Under eminent domain, compensation is given for property taken, injured or destroyed, while under the police power no payment is made for a diminution in use, even though it amounts to an actual taking or destruction of property.

287 Pa. at 264, 134 A. at 411. Moreover, as we recognized in *Redevelopment Authority of Oil City v. Woodring,* 498 Pa. 180, 445 A.2d 724 (1982):

Police power involves the regulation of property to promote health, safety and general welfare and its exercise requires no compensation to the property owner, even if there is an actual taking or destruction of property, while eminent domain is the power to take property for public use, and compensation must be given for property taken, injured or destroyed.

498 Pa. at 185–186, 445 A.2d at 727. Furthermore, for purposes of eminent domain, "[A] 'taking' occurs when the entity clothed with the power of eminent domain substantially deprives an owner of the use and enjoyment of his property." *Conroy—Prugh Glass Co. v. Commonwealth, Dep't. of Transportation,* 456 Pa. 384, 388, 321 A.2d 598, 599 (1974).

■ Here, none of the provisions under which the regulation was promulgated expressly clothes the Commonwealth with the power of eminent domain in order to designate land as unsuitable for mining. Instead, the SMCRA expressly states that such a designation shall be deemed an exercise of the Commonwealth's police power to promote the public welfare. Since the taking in this case was done pursuant to the Commonwealth's police powers, the Eminent Domain Clause does not apply. Therefore, since appellants' action against the Commonwealth does not fall within an enumerated exception of Section 761(a)(1) of the Judicial Code, this matter should have been originally remanded by this Court to the Commonwealth Court.[3]

This conclusion is further supported by the purpose behind bestowing original jurisdiction upon the Commonwealth Court for certain types of actions. In *CRY, supra,* this Court stated that the reason for the creation of the Commonwealth Court is:

[T]o provide a judicial forum for the uniform and consistent resolution of questions of statewide importance. For example, the Department of Environmental Resources must have a clear idea of what its powers and duties are and would be severely handicapped if those powers and duties varied from county to county. Thus, the legislature of this Commonwealth has clearly recognized the interest of the state in

**3.** In reaching this conclusion, we are only passing upon the proper forum for this action. We recognize that sometimes a state action taken pursuant to its police powers can go too far and constitute a *de facto* taking requiring the state to provide just compensation. *See United Artists' Theater Circuit, Inc. v. City of Philadelphia,* 535 Pa. 370, 379–80, 635 A.2d 612, 617–18 (1993). However, we believe that a decision on whether the taking in this case went too far is a question best left for the Commonwealth Court since an adequate record has not yet been developed on this issue.

having an expert, specialized tribunal, Commonwealth Court, articulate uniform statewide standards in cases affecting the sovereign . . . [I]f the Court of Common Pleas decides this question, Commonwealth Court will act only as an appellate court. But appellate scope of review is limited as to factual matters and inferences from fact, many of which are involved in this case. We question whether Commonwealth Court, acting only as an appellate court in cases such as this one, will be able to effectively articulate statewide standards as required by the legislature.

*Id.*, 536 Pa. at 473, 640 A.2d at 378, *quoting Action Coalition v. Allegheny County Institution District*, 493 Pa. 302, 315–16, 426 A.2d 560, 567 (1981).

Here, public interest in uniform, statewide standards in matters concerning the government requires that the Commonwealth Court have jurisdiction over this case. Not only is the Commonwealth Court a specialized forum intended to deal with cases involving Commonwealth agencies, but also, the Commonwealth Court will be able to establish uniform statewide standards on environmental regulations attempting to regulate the usage of land.[4] Such a uniform standard will only be possible if the initial adjudication is performed by the Commonwealth Court since it is highly unlikely that a uniform standard could be formulated by an appellate court on review of a multiplicity of suits emanating from 67 different counties. *See CRY, supra* (even though Clean Stream Law, 35 P.S. § 691.601(c), places jurisdiction to hear citizen suit against polluter in court of common pleas, joinder of Department of Environmental Resources mandated that case be heard by Commonwealth Court since that Court was designed to deal with cases involving Commonwealth agencies and to establish uniform standards on regulations and statutes).

Therefore, we conclude that our previous decision remanding this matter to the Clearfield County Court of Common

---

4. Appellees note that there are five (5) additional unsuitable for mining petitions in various points of review concerning areas located in Somerset, Clearfield, Lawrence, Schuylkill and Westmoreland/Fayette counties.

Pleas pursuant to the Eminent Domain Code was incorrect. Instead, jurisdiction properly rests with the Commonwealth Court since the regulation upon which appellants make their pre-enforcement challenges was promulgated pursuant to the Commonwealth's police power. Accordingly, we vacate our previous judgment to the extent it remanded this matter to the Clearfield County Court of Common Pleas, and, now order that the matter be remanded to the Commonwealth Court for further proceedings.