David DOMIANO

v.

COMMONWEALTH of Pennsylvania, DEPARTMENT OF ENVIRONMENTAL RESOURCES, Now Known as Commonwealth of Pennsylvania, Department of Environmental Protection, Appellant.

Commonwealth Court of Pennsylvania.

Argued April 16, 1998.
Decided June 8, 1998.

David J. Gromelski, Wilkes-Barre, for appellant.

Robert W. Munley, III, Scranton, for appellee.

Before COLINS, President Judge, and LEADBETTER, J., and LORD, Senior Judge.

LORD, Senior Judge.

The Department of Environmental Protection (DEP) appeals an order of the Court of Common Pleas of Lackawanna County denying its preliminary objections to David Domiano's petition for appointment of board of viewers.

On July 22, 1993, DEP issued a letter to Domiano, giving official notice that DEP would enter land in which Domiano holds a leasehold interest for the purpose of accomplishing a stream channel restoration project at an abandoned mine site. Domiano then filed a petition for appointment of board of viewers pursuant to section 502 of the Eminent Domain Code[1] and DEP responded by filing preliminary objections. The preliminary objections averred that the common pleas court did not have jurisdiction to appoint a board of viewers and that Domiano failed to allege a de facto taking.

Citing *Beltrami Enterprises v. Department of Environmental Resources*, 159 Pa. Cmwlth. 72, 632 A.2d 989 (1993), *petition for allowance of appeal denied*, 538 Pa. 615, 645 A.2d 1318 (1994), the common pleas court noted that the law provides that when a court has before it a petition for appointment of viewers alleging a de facto taking to which an objection is made, it must first decide whether, as a matter of law, the petition alleges sufficient facts to state a cause of action. If it does, then the court must take evidence,

either by deposition or otherwise, to determine if the Commonwealth exercised its police powers or eminent domain powers. If the police powers were used, jurisdiction lies with the Environmental Hearing Board (EHB). If, however, the eminent domain power was utilized, then the trial court has jurisdiction. *Id.*

With regard to the allegations of Domiano's petition, the court held that Domiano had sufficiently pleaded a de facto taking. The court also determined that, while Domiano had set forth sufficient facts establishing a right to relief, it was premature to dismiss the case for lack of subject matter jurisdiction because no depositions had been taken.

■ On appeal to this Court,[2] DEP argues that the trial court erred in a number of ways. First, DEP contends that under the facts of this case, the Environmental Hearing Board (EHB), not the trial court, has jurisdiction to determine whether a taking occurred.

In *Beltrami*, a case not entirely unlike this one, the owners of land on which an abandoned mine was located resisted the Department of Environmental Resources' (DER) proposed reclamation of the land by filing a timely notice of appeal with the EHB. In their appeal, the landowners contended a taking had occurred because DER notified them it intended to use surface rock from the abandoned mine to refill the mine. Because they asserted that they planned to quarry that rock, the landowners contended they were entitled to compensation. While the appeal was pending, DER commenced reclamation, using the surface rock. The landowners then filed a petition for appointment of board of viewers, and filed a petition to stay their action before the EHB until the trial court ruled on the claim for compensation under the Eminent Domain Code. The EHB granted the stay; however, DER opposed the petition for appointment of board

---

1. Act of June 22, 1964, Special Sess., P.L. 84, *as amended*, 26 P.S. § 1–502.

2. On appeal, this Court may overturn a trial court's ruling on preliminary objections to a petition for appointment of a board of viewers where

necessary findings of fact are not supported by competent evidence or an error of law was committed. *Department of Transportation v. Mano*, 149 Pa.Cmwlth. 337, 613 A.2d 119 (1992).

of viewers, arguing that jurisdiction was properly with the EHB.

Subsequently, the trial court held that DER's action was not an eminent domain taking but an exercise of the police power, and that the landowners' request for the appointment of board of viewers was not ripe because the landowners had failed to exhaust their administrative remedies before the EHB. On appeal, the landowners argued that the trial court erred first in determining, without a factual basis, that DER's actions constituted an exercise of the police power and, second, that the EHB had primary jurisdiction.

As to the issue of the EHB's jurisdiction over the matter, this Court in *Beltrami* held that "the EHB had exclusive jurisdiction to determine whether or not a taking had occurred." *Id.*, 632 A.2d at 993. The court noted that in *Mock v. Department of Environmental Resources,* 154 Pa.Cmwlth. 380, 623 A.2d 940 (1993), the EHB had previously addressed the issue of whether the Eminent Domain Code deprived the EHB of jurisdiction to consider takings issues. The *Beltrami* court quoted the following portion of the EHB's decision that we affirmed in *Mock* :

> This argument is persuasive on its face, but ignores appellate court decisions construing the Eminent Domain Code. The seminal case, Gaebel v. Thornbury Township [8 Pa.Commonwealth Ct. 399, 303 A.2d 57 (1973)], held that a claim for de facto taking cannot be filed under the Eminent Domain Code where the taking power involves the exercise of the police power. The property owner must first challenge the constitutionality of that exercise by the means provided by the Legislature. In the case of a zoning ordinance, as was involved there, the challenge must be made through procedures contained in the Municipalities Planning Code.

> \* \* \* \* \* \*

> Any claim that the exercise of that power by the DER amounts to an unconstitutional taking of property must be pursued through the procedures contained in the statute-appeal to this board: 32 P.S. § 693.24(a). We clearly have the jurisdiction to consider it.

*Beltrami,* 632 A.2d at 992.

The Court reasoned that the Eminent Domain Code and the jurisdictional provisions of the Environmental Hearing Board Act could be reconciled so as to give both effect:

> The Environmental Hearing Board Act gives the EHB jurisdiction over appeals which, *inter alia,* raise constitutional challenges to an order of the DER based upon takings-related analysis and empowers the EHB to adjudicate the lawfulness of those orders and to set them aside if they amount to unconstitutional takings. The jurisdiction of the courts of common pleas under the Eminent Domain Code might then be invoked in order to determine the amount of damages, if any, that might have occurred as a result of the taking while it was ongoing.

*Id.*, 632 A.2d at 993.

In *Machipongo Land and Coal Co. v. Department of Environmental Resources,* 544 Pa. 271, 676 A.2d 199 (1996), our Supreme Court was confronted with a question of which forum had jurisdiction of a landowner's challenge to an Environmental Quality Board regulation designating a portion of land unsuitable for surface mining. In answer to the appellants' argument that such a challenge stated a claim under the Eminent Domain Code for a de facto taking, the Court invoked "what has long been an acknowledged distinction in this Commonwealth between a taking which occurs pursuant to the Commonwealth's exercise of its police powers and the exercise of its eminent domain power." *Id.*, 544 Pa. at 276, 676 A.2d at 202. Citing *Conroy–Prugh Glass v. Department of Transportation,* 456 Pa. 384, 321 A.2d 598 (1974), the Supreme Court reiterated the fundamental principle that, for purposes of eminent domain, a taking occurs *when the entity clothed with the power of eminent domain* substantially deprives an owner of the use and enjoyment of his property. *Id.*, 544 Pa. at 277, 676 A.2d at 202 (emphasis added). The Court held that we, rather than the common pleas court or the EHB, had jurisdiction of *pre*-enforcement challenges to the validity of environmental regulations. In

so concluding, the Court in *Machipongo* recognized that none of the statutory provisions under which the challenged regulation was promulgated expressly clothed the Commonwealth with the power of eminent domain, so as to confer original jurisdiction on the court of common pleas.[3]

One of those statutes, the Surface Mining Conservation and Reclamation Act (SMCRA), Act of November 30, 1971, P.L. 554, *as amended,* 52 P.S.§§ 1396.1—1396.21, is implicated here. Of this statute, the Supreme Court stated, "the SMCRA expressly states that such a designation shall be deemed an exercise of the Commonwealth's police power to promote the public welfare. Since the taking in this case was done pursuant to the Commonwealth's police powers, the Eminent Domain Code does not apply." *Id.* at 277, 676 A.2d at 202. The other statute under which DEP purported to act on Domiano's land, the Land and Water Conservation Reclamation Act, Act of January 19, 1968, P.L. 996, *as amended,* 32 P.S. §§ 5101—5121, expressly provides that the Department's entry onto land for abatement purposes "shall not be construed as an act of condemnation of property or trespass thereon." 32 P.S. § 5116(a)(1). The July 22, 1993 letter from the then DER to Domiano cited both these statutes, SMCRA and the Reclamation Act, as the sources of its authority to enter the land in order to remove sediment and to stabilize a stream channel. Enclosed with DER's letter was a plan and job description of the project.

Though it has long been accepted that not all government takings occur in the government's exercise of eminent domain, *see e.g.,*

*Gardner v. Department of Environmental Resources,* 145 Pa.Cmwlth. 345, 603 A.2d 279 (1992), and that police power actions may in certain circumstances amount to takings, *Pennsylvania Coal v. Mahon,* 260 U.S. 393, 43 S.Ct. 158, 67 L.Ed. 322 (1922),[4] how, and in what forum such takings are to be remedied has not been the subject of much elaboration in the statutes or case law.[5] As noted, in *Machipongo,* the Supreme Court decided that *this* Court was the forum in which to dispose of pre-enforcement challenges to the validity of Commonwealth agency regulations. In *Gardner v. Department of Environmental Resources,* 658 A.2d 440 (Pa. Cmwlth.1995), we concluded that the *Machipongo* decision did not preclude the vesting of jurisdiction in the EHB when a challenge to a DER (now DEP) enforcement action is lodged:

> The Gardners argue that the Supreme Court's holding in Machipongo overruled this Court's determination in Beltrami that the EHB has jurisdiction over taking claims. We cannot agree that the Supreme Court's decision has that effect. The decision in Machipongo does not hold that the EHB never has jurisdiction over taking claims. Instead, the Supreme Court specifically held that the EHB could not have jurisdiction over a takings claim that in form is a preenforcement challenge to a regulation of the Environmental Quality Board because the EHB's jurisdiction was limited to reviewing post-enforcement challenges to regulations....

*Id.,* 658 A.2d at 448.

█ We return, then, to *Beltrami,* which is factually similar to this case, and in which

---

**3.** The courts of common pleas have jurisdiction over proceedings in eminent domain by virtue of the exception to this Court's original jurisdiction found in Section 761(a)(1)*(ii)* of the Judicial Code, 42 Pa.C.S. § 761 (a)(1)(ii). To recover under Section 502(e) of the Eminent Domain Code for a *de facto* taking, that taking must result from a governmental body's "actual exercise of the power of eminent domain." *Darlington v. County of Chester,* 147 Pa.Cmwlth. 177, 607 A.2d 315, 320, *appeal denied,* 531 Pa. 657, 613 A.2d 562 (Pa.1992).

**4.** *That* police power actions may in certain circumstances amount to takings is now exemplified in *Pennsylvania Coal's* oft-quoted maxim,

"[w]hen regulation goes too far, it will be recognized as a taking." *Id.* at 393, 43 S.Ct. 158.

**5.** In *First Lutheran Church v. Los Angeles County,* 482 U.S. 304, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987), a case arising from a challenge to an interim municipal ordinance restricting for a time construction in certain flood plain areas, the United States Supreme Court, confronted with "the remedial question" in regulatory takings, acknowledged that once a determination of a taking has occurred, the government "retains the whole range of options" available to it – amendment or recission of the challenged regulation or the exercise of eminent domain. *Id.* at 321, 107 S.Ct. 2378.

it was held that jurisdiction to determine whether a taking occurred lay with the EHB. As in *Beltrami*, the common pleas court here was confronted with a petition for appointment of a board of view averring that DEP had taken property located on the petitioner's land and used that property in its reclamation project (in this case, to fill strip mine pits). The petition was objected to on multiple grounds, among them that DEP was *not* exercising the power of eminent domain when it entered Domiano's land to reclaim a streambed. DEP also denied the allegation that it removed any of Domiano's property or rendered it less accessible than before the reclamation efforts. (preliminary objections, paragraphs 16 and 19). The common pleas court misconstrued the nature of DEP's preliminary objections to the petition when it concluded that Domiano's allegations that his valuable culm material was taken was "clearly enough, if proven at trial, to support a claim of *de facto* taking." Preliminary objections to a petition for appointment of a board of view are not demurrers, and the trial court was not required to accept, and should not have accepted, as true the allegations for purposes of testing the sufficiency of the claim. *See, e.g., McGaffic v. Redevelopment Authority of the City of New Castle*, 120 Pa.Cmwlth. 199, 548 A.2d 653 (1988), *appeal denied*, 523 Pa. 645, 565 A.2d 1169 (1989).

■ As we understand *Beltrami*, when a court is faced with preliminary objections to a petition for appointment of a board of view raising a factual question of the nature of the take, the court should, if necessary, consider evidence on whether the government entity was acting in its eminent domain or police power. If it is determined that the actions were taken pursuant to police power, recourse is to the governmental body or administrative agency exercising review of those actions. When the government entity is DEP and its preliminary objections make out a claim on their face that DEP acted, not under its eminent domain powers, but under its police powers, the court should allow the EHB to exercise its primary jurisdiction. Under that authority, EHB adjudicates the lawfulness of DEP enforcement orders or actions that are challenged on the grounds that they are constitutionally impermissible takings without just compensation. A record can be fully developed before the EHB, which can then determine, under a traditional analysis of the regulatory takings question, whether in fact such a taking has occurred, and whether, in appropriate cases, DER's orders should be set aside. It is at that point that the government agency "retains the whole range of options" available to it. *First Lutheran Church*. "The jurisdiction of the courts of common pleas under the Eminent Domain Code might then be invoked in order to determine the amount of damages, if any, that might have occurred as a result of the taking while it was ongoing." *Beltrami*, 632 A.2d at 993.

■ Normally, we would vacate the common pleas court's order denying DEP's preliminary objections and remand this case for the consideration of evidence. However, it is our judgment here that, as a legal matter, DEP has established that its actions were regulatory and not in the exercise of its eminent domain powers. We will therefore reverse the common pleas court's order and remand the case to that court to transfer Domiano's petition to the EHB, with instructions to that tribunal to commence proceedings to determine whether DEP's actions effected a taking under the Fifth Amendment that requires just compensation.

### ORDER

AND NOW, this 8th day of June, 1998, the order of the Lackawanna County Court of Common Pleas, No. 96–CIV–2378, dated June 26, 1997, is hereby reversed and this case is remanded for proceedings consistent with this opinion.

Jurisdiction relinquished.