**[J-30-2017]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| STEVEN KONYK, | : | No. 11 MAP 2016 |
| | : | |
| Appellant | : | Appeal from the Order of the |
| | : | Commonwealth Court at No. 538 MD |
| v. | : | 2014 dated 1/12/16 |
| | : | |
| | : | |
| | : | |
| THE PENNSYLVANIA STATE POLICE | : | |
| OF THE COMMONWEALTH OF | : | |
| PENNSYLVANIA, | : | |
| | : | |
| Appellee | : | SUBMITTED:  March 27, 2017 |

**OPINION**

**CHIEF JUSTICE SAYLOR**                    **DECIDED:  April 26, 2018**

In this direct appeal we address a circumstance in which an individual pleaded guilty in federal court, pursuant to a negotiated plea agreement, to a Megan's Law predicate offense carrying a ten-year registration period.  The primary issue is whether a contract-based cause of action exists in his favor to enforce the ten-year period where subsequent state legislation increased the registration period to fifteen years and the Commonwealth was not a party to the plea agreement.

**I. Background**[1]

In 2005, Appellant entered into a negotiated plea agreement with federal prosecutors in Pennsylvania whereby he pleaded guilty to one count of possessing child

---

[1] As this is an appeal from the sustaining of preliminary objections in the nature of a demurrer, Appellant's well-pleaded factual averments are accepted as true throughout this opinion.  *See Sernovitz v. Dershaw*, 633 Pa. 641, 645 n.2, 127 A.3d 783, 785 n.2 (2015).

pornography. *See* 18 U.S.C. §2252(a)(4)(B). Neither the Commonwealth of Pennsylvania nor the Pennsylvania State Police ("PSP") was a party to the negotiations or the plea agreement. At the time, Megan's Law III was in effect. Based on the offense to which Appellant pled guilty, that enactment required Appellant to register as a sex offender for ten years upon his release from prison. *See* 42 Pa.C.S. §9795.1(a)(3) (superseded).[2] In the context of the plea agreement, Appellant understood and took into account this ten-year period when he pleaded guilty.

Appellant was released from federal custody in March 2007 and began registering his address with PSP as required under Megan's Law III.[3] Since then, he has satisfied all requirements imposed on him at sentencing and has complied with Megan's Law.

In 2012, before Appellant completed his ten-year registration period, Megan's Law III was replaced by Megan's Law IV, also referred to as the Sexual Offender Registration and Notification Act ("SORNA"). *See Commonwealth v. Derhammer*, ___ Pa. ___, ___, 173 A.3d 723, 724-26 (2017) (providing a brief history of the evolution of Megan's Law in Pennsylvania, including the transition from Megan's Law III to SORNA). At that time, Megan's Law III registrants became subject to SORNA's registration requirements. *See* 42 Pa.C.S. §9799.13. In light of this development, PSP told Appellant in December 2012 that he would be reclassified under SORNA's three-tier system. In January 2013, PSP notified Appellant that he was deemed a Tier-1 offender,

---

[2] The ten-year registration period arose from the fact that the federal offense in question was "similar to" one of the Pennsylvania ten-year-registration predicate offenses. 42 Pa.C.S. §9795.1(a)(3) (superseded); *see id.* §9795.1(a)(1) (superseded) (enumerating the state-level predicate crimes which trigger a ten-year registration period).

[3] PSP is responsible for maintaining Pennsylvania's Megan's Law registry and enforcing the law's registration mandates. *See, e.g.*, 42 Pa.C.S. §§9799.16, 9799.22, 9799.32.

*see* 42 Pa.C.S. §9799.14(b)(21), and, as such, his registration term had been enlarged from ten to fifteen years. *See id.* §9799.15(a)(1). Thus, Appellant's registration period is now set to expire in 2022 instead of 2017.

Appellant filed in the Commonwealth Court's original jurisdiction an amended Petition for Review (the "Petition"), naming PSP as the sole respondent. In the Petition, Appellant sought mandamus relief in the form of a directive to PSP to conform Appellant's registration status to the requirements of Megan's Law III rather than SORNA. He asserted that: as a result of his plea agreement, a contract was formed between himself and the Commonwealth; the contract incorporated the ten-year period reflected under Megan's Law III; and retroactive application of SORNA's 15-year period would breach the contract.

PSP filed preliminary objections in the nature of a demurrer, averring that: (a) in light of Appellant's guilty plea, Appellant is now required by statute to register for fifteen years; (b) the six-month statute of limitations for mandamus actions had expired by the time Appellant commenced this litigation; (c) in any event, the elements of mandamus – including a clear right to relief on the part of the petitioner and a mandatory, ministerial duty on the part of the respondent – are absent in view of SORNA's 15-year requirement as applied to Appellant; (d) PSP cannot be liable on a breach-of-contract theory since neither it nor the Commonwealth ever entered into an implied contract with Appellant, given that his plea agreement was with the federal government and not the state government; and (e) to the extent a breach-of-contract claim might otherwise be viable, it is barred by the doctrine of sovereign immunity.

The court disposed of PSP's preliminary objections in a published opinion. *See Konyk v. PSP*, 133 A.3d 96 (Pa. Cmwlth. 2016) (*en banc*). The court first observed that, in spite of the Petition's "mandamus" label, its contents sought equitable relief in the

form of specific performance of the terms of Appellant's plea agreement with the United States. *See id.* at 99-100 & n.8 (citing *Strank v. Mercy Hosp. of Johnstown*, 383 Pa. 54, 56, 117 A.2d 697, 698 (1955) (suggesting a writ of mandamus will not issue to enforce a right based solely on contract and not on law)). However, the court elected to overlook the mislabeling of the Petition and treat it as if it had been correctly labeled. *See id.* at 100 (citing *Taylor v. PSP*, 132 A.3d 590, 599-600 (Pa. Cmwlth. 2016) (indicating that, while it is preferable that petitions be correctly titled, the procedural rules favor treating pleadings by reference to their substance)). Accordingly, the court overruled PSP's mandamus-related preliminary objections.

In terms of the contract claim, the court recited that Appellant's theory was that, by entering into a plea agreement with the United States with the understanding that he only had to register as a sex offender for ten years, Appellant also entered into an implied contract with the Commonwealth that incorporated Megan's Law as it existed at the time of the agreement, *i.e.*, Megan's Law III. The Commonwealth Court rejected this theory, however, noting that Appellant had not alleged that the Commonwealth "was involved or participated in the plea negotiations, was an intended beneficiary of the plea agreement, or benefited from the agreement." *Id.* at 101 (citing *Commonwealth v. Giannantonio*, 114 A.3d 429, 434-35 (Pa. Super. 2015) (rejecting a nearly identical claim)). The court thus sustained PSP's contract-related preliminary objections and dismissed the Petition with prejudice. *See id.*

## II. Threshold issues

PSP initially raises threshold issues concerning the appropriateness of Appellant having brought suit in the Commonwealth Court, and of PSP having been named as a defendant in the litigation. PSP suggests we need not reach the merits of Appellant's contract-based claims for relief because he has commenced an action in the "wrong

forum" against the "wrong entity." Brief for Appellee at 12, 13. PSP indicates that, because Appellant was sentenced in federal court, he should have brought his contract claim there. The agency adds that, in all events, it only has a ministerial role relative to Megan's Law and, as such, Appellant should have named the Commonwealth, rather than PSP, as respondent.

We disagree on both points. Addressing the agency's jurisdictional argument, we note that Appellant's action (albeit mislabeled) asserts a claim against PSP based on an alleged breach of contract. Whether or not that claim is meritorious, it is a civil action against the Commonwealth government. *See* 42 Pa.C.S. §102 (defining "Commonwealth government" to include "departments, boards, commissions, authorities and officers and agencies of the Commonwealth"); *Machipongo Land & Coal Co. v. Dep't of Envtl. Res.*, 544 Pa. 271, 274, 676 A.2d 199, 201 (1996); *Barr v. Bureau of Prof'l & Occupational Affairs*, 803 A.2d 243, 247-48 (Pa. Cmwlth. 2002). As such, it falls within the scope of the Commonwealth Court's exclusive original jurisdiction. *See* 42 Pa.C.S. §761 (generally giving the Commonwealth Court exclusive original jurisdiction over civil actions against the Commonwealth government, subject to certain exceptions which are not presently relevant). Further, we are unaware of any authority – and PSP has not brought any to our attention – suggesting the jurisdiction conferred by Section 761 is negated where the agreement on which the claim is based was reached in a federal forum.

As for PSP's contention that Appellant should not have named it as respondent, the agency portrays its role as purely ministerial and lacking any discretion or ability to make judgments concerning the length of an individual's Megan's Law registration period. However, that premise is not entirely accurate. PSP must occasionally interpret the governing statutory provisions to determine a particular registrant's obligations,

particularly in cases where the statute's requirements are ambiguous in their application. In *A.S. v. PSP*, 636 Pa. 403, 143 A.3d 896 (2016), for example, PSP construed the two-or-more-convictions predicate for lifetime registration to encompass a situation in which a defendant was convicted of multiple offenses based on the same conduct – a construction with which this Court ultimately disagreed.[4] In the present dispute, since Appellant was not convicted of a Pennsylvania offense, PSP was required, initially under Megan's Law III and then under SORNA, to determine the Pennsylvania crime which is similar to his federal offense. *See* 42 Pa.C.S. §9795.1(a)(3) (superseded) (subjecting individuals convicted of out-of-state, foreign, or federal "offenses similar to" the enumerated Pennsylvania predicate offenses to a ten-year registration requirement); *id.* §9799.14(b)(21) (same, albeit relative to a different list of predicate offenses).

Just as important, as PSP has enforcement authority with regard to the requirements of SORNA, *see supra* note 3, it is responsible for taking the actions that Appellant claims violate his contractual rights. Hence, if Appellant's claim is meritorious and he is ultimately found to be entitled to a reduction in his registration period, an order directing PSP to provide the requested relief would be effectual given that agency's central role in creating and maintaining the sex-offender registry. Other jurisdictions have recognized that this factor supports the validity of naming the government agency

---

[4] Notably, PSP adopted this reading notwithstanding that "[t]he parties and the trial court believed [the defendant] was subject to a ten-year registration period, not lifetime registration." *Id.* at 409, 143 A.3d at 899. This Court recognized the statutory text was ambiguous, and it ultimately held that a conviction, followed by a subsequent act, was necessary. Admittedly, the propriety of PSP being a defendant was not at issue in that matter; still, it is relevant that the primary substantive question focused on whether PSP's exercise in statutory construction was correct, *see id.* at 415, 143 A.3d at 903 ("The issue [in this case] involves statutory interpretation, which is a question of law[.]"), thus reflecting that PSP's actions were more than purely ministerial in character.

in question as a defendant, *see, e.g.*, *Schepers v. Comm'r, Ind. Dep't of Corr.*, 691 F.3d 909, 913 (7th Cir. 2012) (concluding that the Indiana state corrections department was a proper defendant in a registrant's lawsuit seeking a process to correct Indiana's sex-offender registry errors, where the department was the governmental body responsible for the creation, publication, and maintenance of the registry); *cf. Ainscough v. Owens*, 90 P.3d 851, 858 (Colo. 2004) ("[W]hen a party sues to enjoin or mandate enforcement of a statute, regulation, ordinance, or policy, it is not only customary, but entirely appropriate for the plaintiff to name the body ultimately responsible for enforcing that law."), and we find their reasoning persuasive.

Accordingly, we conclude that where, as here, a defendant's Megan's Law obligations stem from criminal proceedings in a non-Pennsylvania forum, PSP is an appropriate defendant relative to a cause of action which would result in a directive that the individual's registration period be reduced or eliminated.[5]  Thus, we reject PSP's threshold arguments and turn to whether Appellant has raised a viable contract claim.

### III. Breach-of-contract theories

### A. The Commonwealth as a third-party beneficiary

Appellant initially maintains that the Commonwealth is a third-party beneficiary of the agreement he reached with the United States, since Pennsylvania enacted Megan's Law and is legally entitled to enforce the Megan's Law obligations triggered by his guilty plea.  With regard to the statute, he observes that Section 9795.1(a)(3) of Megan's Law

---

[5] To the extent PSP relies on the intermediate court's decision in *Dougherty v. PSP*, 138 A.3d 152 (Pa. Cmwlth. 2016) (*en banc*), *see* Brief for Appellee at 14-15, that case is distinguishable in that the defendant was convicted in a Pennsylvania forum and entered into a plea agreement directly with the Commonwealth.  We offer no opinion on whether PSP would be a proper defendant in such circumstances.

III, *see* 42 Pa.C.S. §9795.1(a)(3) (superseded), was designed to ensure that persons convicted of federal crimes in Pennsylvania would have to register with PSP.

Under Pennsylvania law, with certain exceptions not presently relevant, a person assumes third-party beneficiary status – and, as such, has standing to recover under a contract – only where both parties to the contract express an intention to benefit the third party and that intention appears in the contract. *See Scarpitti v. Weborg*, 530 Pa. 366, 370, 609 A.2d 147, 149 (1992) (citing, *inter alia*, RESTATEMENT (SECOND) OF CONTRACTS §302 (1979)). Thus, the concept of a third-party beneficiary exists to give intended beneficiaries, under certain circumstances, standing to bring suit to obtain the benefits in question. *See generally Estate of Agnew v. Ross*, 638 Pa. 20, 42, 152 A.3d 247, 259-60 (2017). It does not exist to impose judicially-enforceable obligations on a person or entity who was not a party to the contract and may not even have known of its existence. As one federal court has aptly explained:

> A third-party beneficiary is one who is given rights under a contract to which that person is not a party. Obligations under such a contract, including any obligations to third parties, are created by agreement between the signatories . . .. If the signatories so intend, a third party can enforce the contract against the signatory so obligated. *But the third-party beneficiary, who did not sign the contract, is not liable for either signatory's performance and has no contractual obligations to either.*

*Motorsport Eng'g, Inc. v. Maserati SPA*, 316 F.3d 26, 29 (1st Cir. 2002) (citing, *inter alia*, 13 WILLISTON ON CONTRACTS §37:1, at 9-10 (4th ed. 2000), RESTATEMENT (SECOND) OF CONTRACTS §304 (1981), and FARNSWORTH ON CONTRACTS §10.9, at 773 (1990)) (emphasis added). Therefore, even if we assume, *arguendo*, that the Commonwealth benefits in some sense from the plea agreement in question, the Petition's factual averments do not support the precept that the Commonwealth, as a purported third-party beneficiary, is subject to *legally-enforceable obligations* in favor of Appellant.

**B. Implied contract with the Commonwealth**

As a separate theory, Appellant proposes that, at the time of his plea, an implied contract between himself and the Commonwealth was created. He offers that his own actions in pleading guilty and then staying in Pennsylvania after his release from custody reflect his agreement to be bound by the ten-year registration term under Megan's Law III. As for any actions by the Commonwealth, Appellant refers to the fact that the Legislature passed Megan's Law III with the intent that any federal conviction of a similar offense trigger the then-prescribed sex-offender registration obligations on the part of the defendant. *See, e.g.*, Brief for Appellant at 27 (arguing that, in creating Megan's Law legislation, the Commonwealth took into consideration that some offenders convicted in a non-Pennsylvania forum would be required to register in Pennsylvania).[6]

A contract may be implied in fact when the actions of the parties reflect a "mutual agreement and intent to promise, [and] the agreement and promise have simply not been expressed in words." *Bricklayers of W. Pa. Combined Funds, Inc. v. Scott's Dev.*

---

[6] Appellant briefly advances other arguments which appear designed to support the concept that an implied contract exists between himself and the Commonwealth. These include that, in prosecuting him, the United States acted as an agent of the Commonwealth for Megan's Law purposes, and that the Commonwealth implicitly acted as an intervening party in his federal prosecution. *See id.* at 25-26. However, there are no allegations in the Petition which would support such determinations.

Relatedly, Petitioner faults the Commonwealth Court for failing to accept as true his "well-pled fact" that an implied contract exists between himself and the Commonwealth. Brief for Appellant at 23. Notably, however, whether an implied contract can be derived from a set of underlying facts represents a question of law. *See Reitmyer v. Coxe Bros. & Co.*, 264 Pa. 372, 376, 107 A. 739, 741 (1919). Thus, even to the extent Appellant alleged the existence of an implied contract, the Commonwealth Court was not obligated to accept that allegation as true when ruling on PSP's demurrer. *See Consumers Educ. & Protective Ass'n v. Nolan*, 470 Pa. 372, 379, 368 A.2d 675, 679 (1977).

*Co.*, 625 Pa. 26, 48 n.17, 90 A.3d 682, 695 n.17 (2014) (quoting 1 WILLISTON ON CONTRACTS §1:5 (4th ed. 1990)); *see also Liss & Marion, P.C. v. Recordex Acquisition Corp.*, 603 Pa. 198, 210, 983 A.2d 652, 659 (2009) ("A contract implied in fact is an actual contract which arises where the parties agree upon the obligations to be incurred, but their intention, instead of being expressed in words, is inferred from [their] acts in the light of the surrounding circumstances." (quoting *Elias v. Elias*, 428 Pa. 159, 161, 237 A.2d 215, 217 (1968))).

While the express plea agreement was made with the United States, Appellant appears to suggest that a separate implied-in-fact contract was formed with the Commonwealth at the same time. The difficulty with this theory is that the Commonwealth did not take any actions in regard to Appellant's guilty plea. To the extent Appellant relies on the General Assembly's prior action in passing the version of Megan's Law which was in effect at the time of his plea, there is no suggestion in the Petition that the legislative body thereby manifested an affirmative promise to federal defendants that their registration periods would remain intact notwithstanding the enactment of amendatory or replacement legislation in the post-plea timeframe.

## C. *Commonwealth v. Martinez*

In a supplemental brief, Appellant argues he is entitled to relief under *Commonwealth v. Martinez*, 637 Pa. 208, 147 A.3d 517 (2016), a case in which this Court held that defendants who plead guilty pursuant to a plea agreement with the Commonwealth are entitled to the benefit of their bargains insofar as the Megan's Law aspects of their agreements are concerned.[7] Appellant indicates that, although

---

[7] *Martinez* was decided during the pendency of this appeal. This Court directed the parties to file supplemental briefs addressing its potential effect on, and applicability to, the present case.

*Martinez* involved a defendant's agreement with the Commonwealth, Pennsylvania courts should review and enforce the terms of plea bargains regardless of the identity of the prosecuting entity. In this respect, he suggests that the "intent" of the *Martinez* Court is inconsistent with a circumstance in which only plea agreements consummated in a Pennsylvania court are enforceable. Supplemental Brief for Appellant at 12.[8]

As we read *Martinez*, it affirms that: (a) plea agreements are essentially in the nature of a contract, and (b) the Commonwealth's obligations – and a defendant's corresponding right to the benefit of his or her bargain – arise when the trial court accepts the plea agreement reached by the parties. *See Martinez*, 637 Pa. at 231, 147 A.3d at 531. In terms of the relief available, *Martinez* indicates that a defendant may proceed against the prosecuting entity for specific performance of the contractual terms. *See id.* at 231-32, 147 A.3d at 532.

With that said, however, it is relevant that *Martinez* arose in circumstances where the Commonwealth was the prosecuting entity. It did not purport to address whether the Commonwealth could be held liable for specific performance of an agreement forged between a defendant and the government of another jurisdiction. Under *Martinez* and its supporting case law, moreover, it is the prosecutor, not the government of another jurisdiction, who has an affirmative duty to honor promises made in exchange

---

[8] Appellant also indicates that failure to enforce the ten-year facet of his plea agreement would work a constitutional violation by offending the federal and state Contract Clauses. *See* U.S. CONST. art. I, §10; PA. CONST. art. I, §17. As Appellant did not raise constitutional issues before the Commonwealth Court, any such claim is waived. *See* Pa.R.A.P. 302(a). Appellant seeks to circumvent waiver by reference to a footnote in *Martinez* stating generally that the Contract Clauses "prohibit the Legislature from enacting laws that retroactively impair contract rights." *Martinez*, 637 Pa. at 220 n.8, 147 A.3d at 525 n.8. Such effort is unavailing, as the *Martinez* Court declined to resolve the appeal on constitutional grounds. *See id.* at 229 n.16, 147 A.3d at 530 n.16 (opting not to reach any constitutional questions posed because the case was capable of resolution on non-constitutional grounds).

for a defendant's guilty plea. *See id.* at 232, 147 A.3d at 532 (citing *Commonwealth v. Zuber*, 466 Pa. 453, 458, 353 A.2d 441, 444 (1976)). *See generally State v. Barone*, 689 A.2d 132, 139 (N.J. 1997) ("Absent consent or participation by state authorities in [a federal] plea agreement, federal prosecutors cannot bind state prosecutors and vice versa."). Accordingly, we conclude that nothing in *Martinez* provides a basis for a federal defendant, who reaches a plea agreement with the United States, to proceed on a contract-based theory against the Commonwealth.

We realize this puts individuals in Appellant's circumstances in a difficult position, as they have entered into a plea agreement when Megan's Law III's registration periods were in effect, and they cannot secure relief on a contract-based claim from either the federal or state government. Still, such individuals should be aware that the federal government is not responsible for administering Megan's Law in Pennsylvania and, as such, cannot validly agree to be obligated by a specific contractual provision relating to the length of the individual's post-release sex-offender registration.[9]

## IV. Conclusion

The order of the Commonwealth Court is affirmed.

Justices Baer and Mundy join the opinion.

Justice Todd joins Parts I and III of the opinion, as well as the mandate, and files a concurring opinion.

---

[9] It is also worth noting that, although relief may be unavailable under contract principles, it is not necessarily foreclosed under other theories. *See, e.g.*, *Commonwealth v. Muniz*, ___ Pa. ___, 164 A.3d 1189 (2017) (holding that application of SORNA's longer registration periods relative to convictions which occurred in the pre-SORNA timeframe can give rise to an *ex post facto* violation).

Justice Donohue joins Parts I, II, and III(A) of the opinion, files a concurring and dissenting opinion, and joins the concurring and dissenting opinion authored by Justice Wecht.

Justice Wecht joins Parts I, II, and III(A) of the opinion and files a concurring and dissenting opinion.

Justice Dougherty joins Parts I, II, and III(A) of the opinion and joins the concurring and dissenting opinion authored by Justice Wecht.