Susan SHANER, Terry Shaner, Terry Shaner, Jr. and Stephanie Shaner,

v.

**PERRY TOWNSHIP, Appellant.**

Commonwealth Court of Pennsylvania.

Argued April 4, 2001.

Decided May 8, 2001.

Reargument Denied July 18, 2001.

Allen R. Shollenberger, Wyomissing, for appellant.

Stephen T. Carpenito, Ashland, for appellees.

Before FRIEDMAN, Judge, FLAHERTY, Senior Judge, MIRARCHI, Senior Judge.

FLAHERTY, Senior Judge.

Perry Township (Township) appeals from an order of the Court of Common Pleas of Berks County (trial court) which dismissed its preliminary objections filed in response to a petition for the appointment of viewers filed by Susan Shaner, Terry Shaner, Terry Shaner Jr. and Stephanie Shaner (Shaner) pursuant to Section 502 of the Eminent Domain Code.[1] We affirm.

Shaner is the owner of two improved parcels of real estate, Lot No. 6080 and Lot No. 6204, located along Route 61 in the Township. The surface of both lots is covered with a deep layer of stone, gravel and a partial macadam area. There are three other businesses located within a quarter mile with lots that are also covered in only stone and gravel. In March of 1988, the Township Zoning Hearing Board granted Shaner a variance to operate a gas station on Lot 6080. Shaner originally operated the gas station but in 1991 Shaner leased the gas station to Har-

---

1. Act of June 22, 1964, Special Sess., P.L. 84,  *as amended,* 26 P.S. § 1–502.

jeet Birdi and Salio Kumar. In April of 1988, the Township Zoning Officer issued Shaner an occupancy permit to use the building located on Lot 6204 for commercial purposes and Shaner leased the commercial spaces to various tenants.

From 1988 to 1995 Shaner used both lots without any interference from the Township. In 1995, without notice or warning, the Township filed a complaint in equity against Shaner in the trial court at Docket No. 95–6623. The complaint alleged violations of the Township Zoning Ordinance and the Pennsylvania Air Pollution Control Act with respect to Lot 6080. The complaint neither mentioned Lot 6204, nor the tenants who were operating the gas station. The Township discontinued this action on November 1, 1995.

On February 10, 1996, the Township commenced a second equity action which was docketed at No. 96–1805. The Township complained of excessive noise, dirt, dust and fumes emanating from Lots 6080 and 6204. The complaint sought the issuance of an injunction prohibiting Birdi and Kumar from allowing tractor trailers to park at night with their engines running on Lot 6080 and the imposition of fines and punitive damages. The complaint also alleged that Shaner and the tenants of Lots 6080 and 6204 were in violation of Section 305.1(e) of the Zoning Ordinance because both lots were not paved. The Township sought fines, punitive damages and an injunction forcing Shaner and the tenants to pave both lots. The tenants on Lot 6204 consisted of Keystone Auto owned by Dennis Blessing, Pizza Express owned by Alfredo Liguoro and Keystone Tire owned by James Fink. Blessing and Liguoro terminated their leases with Shaner in 1996 and 1997 due to the litigation.

Following hearings, the trial court issued an order in May of 1998 denying the Township's request that Shaner and the tenants pave both lots and also denied the Township's request for fines and punitive damages. The trial court did however permanently enjoin the parking of tractor trailers on Lot 6080, observing that the tenants of that lot failed to respond to the complaint and as such entered a default judgment against them.

During the litigation, Shaner found several tenants to replace those who had left Lot 6204. The prospective tenants sought permits to operate businesses. However, Mr. O'Neil, the Township Supervisor instructed Mr. Furnange, the Zoning Officer not to issue any occupancy permits until the lots were paved.

On June 15, 1999, Shaner filed a petition for the appointment of viewers claiming that the action of the Township in filing the second equity action and thereafter refusing to issue occupancy permits for the building on Lot 6204, resulted in a temporary de facto taking in that the Township's actions caused them the loss of two tenants and several prospective tenants. The trial court granted the petition and appointed a board of viewers. Thereafter, the Township filed preliminary objections claiming that the facts alleged were insufficient to state a claim for a de facto taking. The trial court then ordered the parties to take depositions of individuals to obtain evidence to either support or refute the issues of fact raised by the petition and preliminary objections. On August 2, 2000, the trial court issued an order overruling the Township's preliminary objections concluding that Shaner made out a claim for a de facto taking in that it was substantially deprived of the use of its property so as to warrant the appointment of a board of view to deter-

mine the amount of just compensation owing. This appeal followed.[2]

■ Initially, the Township argues that the trial court utilized the wrong standard of review for preliminary objections to a petition for the appointment of viewers. Specifically, the Township argues that a petitioner in alleging a de facto taking has a heavy burden of proof and "must show that exceptional circumstances exist which substantially deprive him of the use of his property and further, that this deprivation is the direct and necessary consequence of the actions of the entity having the power of eminent domain." *Holmes Protection of Pittsburgh, Inc. v. Port Authority of Allegheny County,* 90 Pa.Cmwlth. 342, 495 A.2d 630, 632 (1985), *petition for allowance of appeal denied,* 519 Pa. 656, 546 A.2d 60 (1988). The Township argues however that the trial court used the wrong standard because in his opinion, the trial court judge stated:

> In ruling upon these preliminary objections, we note that the Pennsylvania Rules of Civil Procedure state that:
>
>> all material facts alleged in the petition as well as all inferences reasonably deducible therefrom are admitted as true. The question presented by a demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. Where a doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling it.

(Trial court opinion at p. 5.)

■ We disagree with the Township that the trial court erred in utilizing the above as this court has previously stated, "a court confronted with a petition for an appointment of viewers alleging a de facto taking which is objected to, must first decide as a matter of law, whether the averments of the petition, taken as true, are sufficient to state a cause of action." *Beltrami Enterprises, Inc. v. Department of Environmental Resources,* 159 Pa. Cmwlth. 72, 632 A.2d 989, 991 (1993), *petition for allowance of appeal denied,* 538 Pa. 615, 645 A.2d 1318 (1996). Thereafter, "[i]f the averments might establish a de facto taking, the trial court must then take evidence by deposition or otherwise, in order that a judicial determination can be made." *Beltrami,* 632 A.2d at 991.

Here the trial court, accepting the averments of the petition as true, determined that Shaner stated a cause of action. The trial court then proceeded as it was required to do and took evidence by deposition, in order that a judicial determination could be made. In determining whether a de facto taking had occurred the trial court recognized that "[a] landowner alleging a de facto taking is under a heavy burden to establish that such a taking has occurred." *Miller and Son Paving, Inc., v. Plumstead Twp.,* 552 Pa. 652, 717 A.2d 483, 485 (1998) [*cert. denied,* 525 U.S. 1121, 119 S.Ct. 903, 142 L.Ed.2d 902 (1999) ].... "A de facto taking occurs whenever the entity clothed with the power of eminent domain substantially deprives an owner of the use and enjoyment of his property." *Id.* at 485. (Trial court opinion at p. 6.) Thus, contrary to the assertion made by the Township, the trial court did recognize that Shaner possessed a heavy burden of proof to show that the Township's actions constituted a de facto taking.

■ Moreover, although the Township argues that in contravention of *Domiano v. Department of Environmental Re-*

---

**2.** Our review of a trial court's ruling on preliminary objections to a petition for appointment of a board of viewers is limited to determining whether an error of law was committed or whether necessary findings of fact are supported by substantial evidence. *Department of Transportation v. Mano,* 149 Pa.Cmwlth. 337, 613 A.2d 119 (1992).

*sources,* 713 A.2d 713, (Pa.Cmwlth.1998) the trial court improperly relied solely on the allegations in Shaner's petition for appointment of viewers in determining that Shaner proved a de facto taking, we observe that the trial court ordered the taking of depositions and based its decision on the evidentiary record.[3]

■ Next, the Township argues that Shaner failed to prove a de facto taking relying on *Miller.* In that case Miller purchased property which was zoned residential. On the same day, Miller filed an application with the township for a curative amendment to the zoning ordinance arguing that the ordinance was unconstitutional because it failed to make provisions for quarrying. This court affirmed the trial court's order which found that the ordinance excluded quarrying, but reversed the determination that Miller was not entitled to site-specific relief. *Appeal of Miller and Son Paving, Inc.,* 161 Pa. Cmwlth. 138, 636 A.2d 274 (1993), *petition for allowance of appeal denied,* 538 Pa. 629, 646 A.2d 1182 (1994).

Miller also filed a petition for the appointment of viewers alleging a de facto taking during the period in which Miller was precluded from quarrying. Both the trial court and this court determined that Miller established a compensable temporary de facto taking for the period between the date when the property was purchased and the date the zoning ordinance was invalidated.[4] The Supreme

Court reversed concluding that "because Miller was never denied all viable or economic use of its property and Miller was ultimately granted the right to quarry, no taking occurred prior to the time when the ordinance was deemed unconstitutional." *Miller,* 552 Pa. at 655, 656, 717 A.2d at 485.

■ The Court observed that a de facto taking occurs whenever the entity clothed with the power of eminent domain substantially deprives an owner of the use and enjoyment of his property. *Id.* 552 Pa. at 656, 717 A.2d at 485. Police power actions may also result in a taking when the regulations go too far. *Domiano,* 713 A.2d at 716, n. 4. Citing *United Artists' Theater Circuit Inc. v. City of Philadelphia,* 535 Pa. 370, 635 A.2d 612 (1993), the Court enumerated three conditions for determining whether a valid regulatory restriction constitutes a taking requiring just compensation.

(1) the interest of the general public, rather than a particular class of persons, must require governmental action;

(2) the means must be necessary to effectuate the purpose; and

(3) the means must not be unduly oppressive upon the property holder, considering the economic impact of the regulation, and the extent to which the government physically intrudes upon the property.

---

3. In a footnote, Township also argues that the trial court's order should be reversed because it failed to conduct an evidentiary hearing. We note however that at oral argument held before the trial court on June 19, 2000 on the preliminary objections, Township did not argue that the trial court's order requiring depositions rather than court testimony was in error. As such, this argument is waived as it is being raised for the first time on appeal. *Donohue v. Arrowhead Lake Community Association,* 718 A.2d 904 (Pa.Cmwlth.1998).

Moreover, it is within the court's discretion to take evidence "by deposition or otherwise." *Beltrami,* 632 A.2d at 991.

4. *Miller and Son Paving, Inc. v. Plumstead Township,* 680 A.2d 5 (Pa.Cmwlth.1996), *rev'd, Miller and Son Paving, Inc., v. Plumstead Twp.,* 552 Pa. 652, 717 A.2d 483 (1998), *cert. denied,* 525 U.S. 1121, 119 S.Ct. 903, 142 L.Ed.2d 902 (1999).

*Miller*, 552 Pa. at 656, 717 A.2d at 486. In *Miller*, the Court focused on the third criteria and determined that the ordinance, although ultimately deemed exclusionary, was not unduly oppressive. Specifically, although the ordinance did not permit Miller to quarry, the property was zoned residential, which permitted single-family dwellings, public buildings and farm and accessory buildings.

The Court distinguished *First English Evangelical Lutheran Church of Glendale v. County of Los Angeles*, 482 U.S. 304, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987). In that case, the County of Los Angeles adopted an interim ordinance which prohibited construction of any building in a flood protection area. The church sought damages for the loss of use of property it had purchased in the flood protection area prior to the adoption of the ordinance. The United States Supreme Court required that the church be compensated for the period of time before it was finally determined that the regulation constituted a taking. The *Miller* court distinguished *First English* observing that unlike the church in *First English*, Miller was not deprived of all use of its property, but was illegally denied the use of quarrying. Also, the church in *First English*, did not challenge the validity of the ordinance as did Miller, but only sought damages alleging a taking.

Applying the elements set forth in *United Artists'*, and keeping in mind the teachings of *Miller* and *First English*, we agree with the trial court that a temporary de facto taking has occurred. As to the first element set forth in *United Artists'*, we observe that the Township decided to mandate the paving of the lots after allegedly receiving complaints from a small number of neighbors who lived in the immediate vicinity of the two lots. Thus, it appears that a particular class of persons, rather than the interest of the general public were the reason for the Township's actions.

Secondly, with respect to whether the means employed by the Township to effectuate its purpose were necessary, we quote from the trial court which stated:

[T]he means used by Perry Township, i.e., the refusal to issue the occupancy permits while the second equity action was pending certainly were not necessary to effectuate that purpose, for that equity action was certainly the proper forum for determining whether the Shaners would be required to pave Lot No. 6204 with either macadam or concrete in accordance with Section 305.1(e) of the Perry Township Zoning Ordinance. As a matter of fact, Perry Township's refusal to issue occupancy permits served no purpose other than to inflame the already strained relationship between Perry Township and some of its taxpayers.

(Trial court opinion at p. 7–8.)

Here, the decision not to issue the permits was not based on a determination that the prospective businesses did not qualify for them. Rather, the permits were not issued because a lawsuit was pending wherein the Township sought Shaner and its tenants to pave lots 6080 and 6204. Whether or not Shaner and its tenants were ultimately required to pave the lots should not have affected the issuance of the occupancy permits.

Finally, as in *First English*, Shaner has been precluded from utilizing its property. Specifically, the property is only zoned commercial. Shaner has been unable to lease its property because of the Township's refusal to issue occupancy permits to commercial tenants. Because of the zoning and the refusal to issue the occupancy permits, Shaner is unable to rent to residential, industrial prospects, etc., as in

*Miller.* Here, the Township deprived Shaner of all lawful use of its property when it deprived prospective tenants of occupancy permits because of the pending litigation concerning the paving of the lots.

In accordance with the above, the order of the trial court is affirmed.

### ORDER

Now, May 8, 2001, the order of the Court of Common Pleas of Berks County at No. 99–5872, dated August 2, 2000, is affirmed.