**PARKER AVENUE, L.P.**

**v.**

**CITY OF PHILADELPHIA and Philadelphia City Council,**
**Appellants.**

Commonwealth Court of Pennsylvania.

Argued May 6, 2015.
Decided July 30, 2015.

See also 2013 WL 1742498, 2013 WL 4196420.

Kelly S. Diffily, Deputy City Solicitor, Philadelphia, for appellants.

Anthony R. Twardowski, Philadelphia, for appellee.

BEFORE: DAN PELLEGRINI, President Judge, RENÉE COHN JUBELIRER, Judge, ROBERT SIMPSON, Judge, MARY HANNAH LEAVITT, Judge, P. KEVIN BROBSON, Judge, PATRICIA A. McCULLOUGH, Judge, and ANNE E. COVEY, Judge.

OPINION BY Judge ANNE E. COVEY.

The City of Philadelphia (Philadelphia) and Philadelphia City Council (City Council) (collectively, City) appeal from the Philadelphia County Common Pleas Court's (trial court) May 28, 2014 orders overruling the City's preliminary objections and granting Parker Avenue, L.P.'s (Parker Avenue) Petition for Appointment of a Board of Viewers (Petition). There are three issues before the Court: (1) whether the trial court erred in holding that City Council's inherently discretionary inaction in not enacting legislation gave rise to a *de facto* taking; (2) whether the trial court erred in finding Parker Avenue was substantially deprived of the beneficial use and enjoyment of its property; and (3) whether the trial court erred in finding a *de facto* taking occurred on November 29, 2007, two weeks after the proposed legislation was introduced by a City Council member. After review, we reverse.

On March 31, 2005, Parker Avenue purchased a 7.62 acre [1] parcel of park land (Property) then zoned as R–5 Residential [2] for purposes of residential development. Shortly thereafter, Parker Avenue initiated efforts to build 48 single-family, semi-detached homes upon the Property along Cinnaminson Street, which bisects the Property. A portion of Cinnaminson

Street is legally-open and sits upon Philadelphia-owned land. Philadelphia has already improved this legally-open portion of Cinnaminson Street by installing water and sewer lines, fire hydrants, manhole covers and water basins. In contrast, the portion of Cinnaminson Street that runs through the Property has not been legally opened and is merely a paper street that is essentially an unimproved trail. Parker Avenue first submitted a preliminary plat plan to Philadelphia's Planning Commission (PPC) on July 28, 2005 which the PPC approved on November 22, 2005. During the next two years, Parker Avenue obtained the necessary clearances from the Philadelphia Water Department and various environmental agencies in order to proceed with its residential development.

Thereafter, Parker Avenue submitted two proposed ordinances to Philadelphia's Streets Department, the first of which would have permitted the paving of the Philadelphia-owned portion of Cinnaminson Street, and the second which would have revised Cinnaminson Street's lines and grades so that it would be capped by a cul-de-sac, rather than extending beyond the Property's boundaries. On November 14, 2007, Philadelphia Streets Commissioner Clara Tolson (Tolson) presented both ordinances to then Philadelphia Mayor John Street (Mayor) and asked him to submit them to City Council for introduction at City Council's next meeting. These ordinances could not be enacted without City Council's authorization. The ordinances were introduced as separate bills to City Council's Committee on Streets and Services (Streets Committee) on Novem-

---

1. The Property, at the time of purchase, covered 8.3 acres. However, Parker Avenue sold .68 acres of the land abutting Parker Avenue on May 25, 2006 to Jewel, LLC.

2. R–5, which is now known as RSA–3 under the current version of Philadelphia's Zoning Code, allows for the by-right erection of single-family detached or semi-detached homes, subject to certain lot size, building height, set back and open space restrictions.

ber 15, 2007 by Councilwoman Carol Campbell (Campbell), who was then the Councilperson for Philadelphia's Fourth District where the Property is located.

. On November 21, 2007, Tolson enhanced the ordinances' introduction to City Council by sending them directly to the Streets Committee and informing its members that they were supported by the Streets Department and were being recommended to the Streets Committee for favorable action.. The bills were then put on the Streets Committee's agenda to be addressed during its November 29, 2007 meeting. On November 25, 2007, Patricia Brennan (Brennan), on behalf of Ridge Park Civic Association (Ridge Park), a Registered Community Organization (RCO) located in Philadelphia's Roxborough neighborhood, having learned of the ordinances and their associated bills while perusing Philadelphia's website, emailed Councilpersons Frank DiCicco (DiCicco) and Anna Verna, and copied Campbell and four other City councilpersons. Therein, Brennan stated that the local community was strongly opposed to the development of Parker Avenue's Property, intimated that the paving of Cinnaminson Street, once completed, would create hazardous conditions, and asked for the bills to be tabled until January 2008. Brennan claimed that this delay would enable Ridge Park's members to meet with Curtis Jones (Jones), who had defeated Campbell in the recent election and was slated to become the Fourth District's new councilperson.

Brennan's efforts were successful. The bills were removed from the Streets Committee's agenda and were not addressed during its November 29, 2007 meeting. On December 7, 2007, on behalf of Parker Avenue, Gregory Ventresca (Ventresca)

sent DiCicco a letter in which he asked the Streets Committee to reconsider its decision and convene a special meeting prior to City Council's December recess, so the bills could be approved. This request was not acted upon, and the ordinances lapsed when Campbell left office at the end of 2007.

In January 2008, Jones assumed his position as the Fourth District's councilperson, whereupon both Parker Avenue and Ridge Park quickly attempted to sway him with their respective arguments. In response, Jones encouraged Parker Avenue to meet with the Germany Hill[3] community, in order to see whether its residents could be convinced to drop their resistance. Parker Avenue followed Jones' advice, meeting numerous times with Ridge Park over the course of the following two years, and showing Ridge Park a number of alternate development proposals. However, Ridge Park's members remained opposed to the ordinances.

In early 2013, Parker Avenue filed a complaint in federal court against the City for violation of the Equal Protection Clause and the Due Process Clause of the United States (U.S.) Constitution seeking damages and a writ of mandamus compelling the City to pave Cinnaminson Street. The U.S. District Court held that "[Parker Avenue] **simply has no property interest** and thus no procedural due process right to be heard in that forum either to urge passage or to urge defeat of legislation even though it may affect the value of [Parker Avenue's] real estate[;]" and, "while the complaint avers that [Jones] and City Council are being irrational and arbitrary in failing to enact legislation desired by [Parker Avenue] and that [Parker Avenue] is being harmed as a result, **it has**

---

**3.** The Property is located within Germany Hill, a large tract of undeveloped land used as a park which encompasses both privately-held and Philadelphia-owned property. The latter of which has been incorporated in Fairmount Park.

simply not pleaded sufficient facts to make plausible the conclusory allegations of unconstitutional behavior[,]" and thus, dismissed the complaint for failure to state a claim. *Parker Ave., L.P. v. City of Phila.*, 2013 WL 1742498 (E.D.Pa. No. 13–121, filed April 23, 2013), slip op. at 3, 4 (emphasis added).[4]

■ On May 17, 2013, Parker Avenue filed its Petition, arguing that since it had been deprived of the Property's beneficial use and enjoyment, it suffered a *de facto* condemnation of the entire Property, and seeking appointment of a Board of Viewers to determine its just compensation and special damages. On July 19, 2013, the City filed its preliminary objections. On July 30, 2013, Parker Avenue answered the preliminary objections. The trial court held hearings on February 26, April 11, and May 9, 2014. On May 27, 2014, the trial court overruled the City's preliminary objections and granted Parker Avenue's Petition. Specifically, the trial court ordered, in pertinent part:

> [Parker Avenue] has presented compelling evidence, and has, beyond any reasonable doubt, met its strict burden of proving that a *de facto* taking of [Parker Avenue's P]roperty has occurred. This *de facto* taking by the [City], occurred in furtherance of a public project—specifically, to use [Parker Avenue's] private property as a public park for the use and enjoyment of the public.[5]

> The evidence presented by [Parker Avenue] has proven that [the City] ha[s] taken extraordinary and unique measures to suppress and interfere with the development of [Parker Avenue's] private property, that the [City's] actions constituted an exercise of its eminent domain power. These actions have rendered [Parker Avenue's] property virtually useless, and has completely precluded the highest and best use of the property.[6]

Trial Ct. Order at 1. The City appealed to this Court.[7]

The City first argues that the trial court erred in holding that City Council's inherently discretionary inaction in not enacting legislation authorizing the paving to provide access to Parker Avenue's Property nor the significant City Plan changes gave rise to a *de facto* taking. Specifically, the City contends that where no duty exists to compel City Council to enact legislation, an inherently discretionary function that requires weighing competing interests of multiple stakeholders and the best interests of Philadelphia at-large, City Council's inaction cannot support a *de facto* taking claim. We agree.

■ Whether City Council's inaction can be considered a *de facto* taking is an

---

4. Parker Avenue filed an amended complaint which was dismissed for the same reasons. *Parker Ave., L.P. v. City of Phila.*, 2013 WL 4196420 (E.D.Pa. No. 13–121, filed August 15, 2013).

5. Notably, Philadelphia did not "take" the Property to use as park land. Rather, Parker Avenue purchased the Property in the hopes of developing it.

6. The trial court's opinion relies upon the City's failure to pave Cinnaminson Street as its "extraordinary and unique measures to suppress and interfere with the development

of [Parker Avenue's] private property." Trial Ct. Order at 1; *see* Trial Ct. Op. at 19, 20, 21.

7. The standard of review of a trial court's order overruling preliminary objections to a petition to appoint a board of viewers under the [Eminent Domain] Code is limited to considering whether competent evidence in the record supports necessary factual findings and whether the trial court erred as a matter of law. *William Schenk & Sons v. Northampton, Bucks Cnty., Mun. Auth.*, 97 A.3d 820, 824 n. 6. (Pa.Cmwlth.2014).

issue of first impression. Initially, Section 502(c) of the Eminent Domain Code [8] provides:

**Condemnation where no declaration of taking has been filed.**—

(1) An owner of a property interest who asserts that the owner's property interest has been condemned without the filing of a declaration of taking may file a petition for the appointment of viewers substantially in the form provided for in subsection (a) setting forth the factual basis of the petition.

(2) The court shall determine whether a condemnation has occurred, and, if the court determines that a condemnation has occurred, the court shall determine the condemnation date and the extent and nature of any property interest condemned.

(3) The court shall enter an order specifying any property interest which has been condemned and the date of the condemnation.

(4) A copy of the order and any modification shall be filed by the condemnor in the office of the recorder of deeds of the county in which the property is located and shall be indexed in the deed indices showing the condemnee as grantor and the condemnor as grantee.

26 Pa.C.S. § 502(c). Here, Parker Avenue's Petition averred that the City had accomplished a *de facto* taking of its Property. The law is well-settled:

In order to prove a *de facto* taking, the property owner must establish exceptional circumstances that substantially deprived him of the beneficial use and enjoyment of his property. **This deprivation must be caused by the actions of an entity with eminent domain powers. Also, the damages sustained must be an immediate, necessary and unavoidable consequence of the exercise on the entity's eminent domain powers. A *de facto* taking is** not a physical seizure of property; rather, it is **an interference with one of the rights of ownership** that substantially deprives the owner of the beneficial use of his property. The beneficial use of the property includes not only its present use, but all potential uses, including its highest and best use.

*In re Borough of Blakely,* 25 A.3d 458, 463–64 (Pa.Cmwlth.2011) (citations omitted; emphasis added). "Property owners alleging a *de facto* taking bear a heavy burden of proof.... Further, there is no bright line test to determine when a government action results in a *de facto* taking; each case turns on its own facts." *Id.* at 465.

Parker Avenue asserts that it has met its heavy burden because it proved that it has been substantially deprived of the use and enjoyment of the Property because the City's misconduct has resulted in its inability to proceed with the Property's by-right development. Parker Avenue cites *Shaner v. Perry Township,* 775 A.2d 887 (Pa.Cmwlth.2001) to support its position. In *Shaner,* the township instituted two actions against the property owners. One action sought the paving of two lots. During the litigation, property owner's two new tenants (the prior tenants left due to the litigation) sought occupancy permits. The zoning officer was instructed by the township not to issue the permits until the lots were paved. The *Shaner* Court concluded that the act of not issuing the permits was a *de facto* taking of the property. Parker Avenue maintains that City Council's failure to authorize the paving of Cinnaminson Street is

---

8. 26 Pa.C.S. §§ 101–1106.

analogous to the township's failure to issue the occupancy permits. We disagree.

In *Shaner*, the Court expressly held that

the decision not to issue the permits was not based on a determination that the prospective businesses did not qualify for them. Rather, the permits were not issued because a lawsuit was pending wherein the [t]ownship sought Shaner and its tenants to pave lots 6080 and 6204. Whether or not Shaner and its tenants were ultimately required to pave the lots should not have affected the issuance of the occupancy permits.

... Shaner has been precluded from utilizing its property. Specifically, the property is only zoned commercial. Shaner has been unable to lease its property because of the [t]ownship's refusal to issue occupancy permits to commercial tenants. Because of the zoning and the refusal to issue the occupancy permits, Shaner is unable to rent to residential, industrial prospects, etc., .... [T]he [t]ownship deprived Shaner of all lawful use of its property when it deprived prospective tenants of occupancy permits because of the pending litigation concerning the paving of the lots.

*Id.* at 892–93. The instant matter is distinguishable from *Shaner* for a myriad of reasons. First, Parker Avenue has not been deprived of all lawful use of its property. Parker Avenue can still build a single dwelling now, as it was permitted to do on the date of purchase. Second, even if the City authorized Cinnaminson Street's paving, and the City Plan changes, Parker Avenue would still need the Board of Surveyors' endorsement for the changes, and the Planning Commission's final plat approval. Third, because the tenants in *Shaner* qualified for the permits which they sought, the township had no legitimate reason to deny them. Here, Parker

Avenue is not entitled to the ordinances it proposed. As the trial court explained:

Of course, this is not to say that City Council was required to authorize the paving of Cinnaminson Street. Indeed, one of the bedrock principles of democracy is that legislators cannot be compelled to use their lawmaking powers in specific ways and, subject to judicial review, must have the freedom to wield their authority as they see fit.

Trial Ct. Op. at 21. The City's decision whether to enact said ordinances requires weighing competing interests of multiple stakeholders and the best interests of Philadelphia at-large. Because the City acted within its discretion by not addressing the ordinances, *Shaner* is inapposite, and thus, not controlling.

Moreover, in its brief, Parker Avenue states:

[T]he actions and inactions of the City represent organized and continuous efforts to deny Parker Avenue the ability to develop its Property **consistent with the use expressly permitted under the zoning regulations, on which Parker Avenue relied when it purchase[d] the Property.** The City has taken extraordinary and unique measures to suppress and interfere with development of the Property, all done with the intent to augment its park land inventory, the result of which has left Parker Avenue with a **virtually valueless** and unusable piece of land. The cumulative effect of these exceptional circumstances has been to deny Parker Avenue the reasonable use and enjoyment of its property, therefore, constituting a *de facto* taking.

Parker Ave. Br. at 36. However, these claims are belied by the facts of record.

Parker Avenue purchased the Property knowing it was landlocked for the purposes of such development, as no paved, legally-open, Philadelphia Zoning Code

(Code)-compliant street provided access for such a use. Because the Code requires legislative authorization to pave Cinnaminson Street across the adjacent Philadelphia-owned property, and to make changes to the City Plan, Parker Avenue was aware **before the Property's purchase,** that it needed City Council's support to proceed with the proposed development. *See* Reproduced Record (R.R.) at 306a. In addition, Parker Avenue met with Ridge Park in September 2004 to deliver its residential subdivision development proposal, more than six. months **before purchasing** the Property, and was on notice at that time that the community was opposed to the proposed development. *See* R.R. at 720a. Ridge Park (and its predecessor organization) had for decades opposed development in Germany Hill, having consistently concluded that past proposals were not in the best interests of the neighborhood, which desired to keep the land undeveloped. *See* R.R. at 343a.

Further, the risk that the Property may not be subject to development was reflected in the Property's net purchase price of $150,000.00 for the 7.62 acres at issue, on which Parker Avenue intended to construct 48 single-family homes.[9] When compared with the market value of the sliver of Parker Avenue's lot with street access, which Parker Avenue sold in May 2006 for $350,000.00 (for two-thirds of an acre) for the construction of five single-family homes, it is clear that Parker Avenue's net purchase price fully incorporated the risk that the 7.62 acres would never be developed. R.R. at 231a–232a. Thus, nothing was "taken" from Parker Avenue that it had or legitimately expected to get.

Accordingly, the trial court erred in concluding that the City's failure to enact the ordinances was a *de facto* taking of the Property.

■ The City next argues that the trial court erred in finding that Parker Avenue was substantially deprived of the beneficial use and enjoyment of the Property. Specifically, the City contends there was no evidence to support the conclusion that a residential subdivision was the Property's highest and best use. Parker Avenue rejoins that the City waived the argument by not raising it in its 1925(b) Statement of Matters Complained of on Appeal (1925(b) Statement).[10] However, the City did raise the issue of whether "Parker Avenue did . . . lose the beneficial use and enjoyment of its [P]roperty. . . ." City 1925(b) Statement ¶ 4. The trial court opined: "In deciding whether exceptional circumstances have substantially deprived a landowner of the benefit and enjoyment of his property, a court must recognize that **the concept of beneficial use encompasses all potential uses [for that piece of land,] including its highest and best use."** Trial Ct. Op. at 18 (quotation marks omitted; emphasis added). Accordingly, the highest and best use argument is subsumed in the City's beneficial use argument, and thus is not waived.

■ Well-settled law provides:
The beneficial use of a property includes not only its present use but all potential uses including its highest and best use. The property owner bears the burden of proving that the property is adaptable for a use other than its current use and that there is a need for this other use.

9. Parker Avenue paid $500,000.00 for the entire 8.3 acres. *See* R.R. at 305a.

10. "Pursuant to [Pennsylvania Rule of Appellate Procedure 1925(b)], issues are considered waived when no 1925(b) [S]tatement is filed or when an issue is not included in a filed statement." *Commonwealth v. Holtzapfel,* 895 A.2d 1284, 1287 (Pa.Cmwlth.2006) (emphasis added).

*Gaughen v. Dep't of Transp.*, 123 Pa. Cmwlth. 550, 554 A.2d 1008, 1015 (1989) (citation omitted). Importantly, where "[t]he case ... is one in which the claim of *de facto* taking is not only prospective but is also **speculative and conjectural** ... our law of eminent domain does not in its present posture, provide relief." *In re Borough of Blakely*, 25 A.3d 458, 467 (Pa. Cmwlth.2011) (bold and italic emphasis added) (quoting *Petition of 1301 Filbert Ltd. P'ship for Appointment of Viewers*, 64 Pa.Cmwlth. 605, 441 A.2d 1345, 1360 (1982)).

Concerning whether Parker Avenue's planned residential subdivision is remote and speculative, Parker Avenue maintains that

> the City ignores the fact that Parker Avenue **paid a substantial sum** for the vacant parcel and invested significant time, additional money and energy with architects, engineers and attorneys to proceed with its development.... **This, then, is not a situation where a property owner is attempting to claim a hypothetical, remote or fanciful use of the property** in order to obtain higher damages in the condemnation proceedings. To the contrary, Parker Avenue purchased the Property with the specific purpose of developing it as planned and as expressly sanctioned by the City's zoning, and the sole use to which it put the Property after acquisition was in furtherance of that goal.

Parker Ave. Br. at 49–50 (emphasis added). However, as explained above, although Parker Avenue paid $500,000.00 for the entire 8.3 acres, it received $350,000.00 for the .68 acres it sold in 2006. Thus, comparatively, $150,000.00 for 7.62 acres is not "substantial." Further, although, Parker Avenue bought the Property with the intent of developing a residential subdivision, it was aware that it was a risky venture given the necessary approvals needed and the community resistance before, during and after the purchase. Moreover, even if the ordinances had passed, Parker Avenue still needed the Board of Surveyors' endorsement for the City Plan changes which required a publicly-advertised hearing at which public testimony is taken, and the Planning Commission's final plat approval. Given, the community's resistance, the Board of Surveyors' endorsement is speculative at best.

Based on the above, the trial court's conclusion that the only obstacle preventing Parker Avenue from developing a residential subdivision on its Property is "passage of a routine and pro-forma paving ordinance, [which] constituted an exceptional circumstance, one that substantially deprived it of the beneficial use and enjoyment of [its] Property[,]" is not supported by the record evidence.[11] Trial Ct. Op. at 19. "[Parker Avenue] had not met its [burden of proof] showing that the alleged detriment, underlying the claim of *de facto* taking, was the direct and necessary consequence of the [City's failure to pass a routine paving ordinance.]"[12] *1301 Filbert*, 441 A.2d at 1359 (italics added). Accordingly, the trial court erred in concluding that developing a residential subdivision was the highest and best use of

---

11. The trial court further ignored the fact that the "inaction" concerned not only enacting two ordinances, but approval of the City Plan changes. Moreover, the federal court's dismissal of Parker Avenue's federal mandamus action further evidences a lack of duty upon the City to perform the paving. *See Parker*

*Ave., L.P. v. City of Phila.*, 2013 WL 4196420 (E.D.Pa. No. 13–121, filed August 15, 2013).

12. This Court does not otherwise hold that a *de facto* taking can be established by a city's **inaction** as opposed to action.

the Property as the record evidence established it was remote and speculative.[13]

For all of the above reasons, the trial court's May 28, 2014 order overruling the City's preliminary objections is reversed, and the trial court's May 28, 2014 order granting Parker Avenue's Petition is vacated.

### ORDER

AND NOW, this 30th day of July, 2015, the Philadelphia County Common Pleas Court's (trial court) May 28, 2014 order overruling the City of Philadelphia's and Philadelphia City Council's preliminary objections is reversed. The trial court's May 28, 2014 order granting Parker Avenue, L.P.'s Petition for Appointment of a Board of Viewers is vacated.

---

**13.** Based on the disposition of the first two issues, we need not address the City's third issue.