# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Chosen 300 Ministries, Inc.,    :
       Appellant  :
           :
    v.      : No. 67 C.D. 2015
           : Argued:  October 6, 2015
City of Philadelphia Zoning Board of :
Adjustment      :


BEFORE:  **HONORABLE BONNIE BRIGANCE LEADBETTER,** Judge
     **HONORABLE P. KEVIN BROBSON,** Judge
     **HONORABLE ANNE E. COVEY,** Judge


<u>**OPINION NOT REPORTED**</u>


**MEMORANDUM OPINION BY**
**JUDGE LEADBETTER**      **FILED:  January 19, 2016**


   Chosen 300 Ministries, Inc. (Appellant) appeals from the order of the Court of Common Pleas of Philadelphia County which affirmed a decision of the City of Philadelphia Zoning Board of Adjustment (Board) granting a variance to Ting Yi Liang and Dao Hua Lei (collectively, Appellees) to develop the property located at 1111-1121 Ridge Avenue, Philadelphia, into a nine unit residential apartment complex.  After review, we affirm.

   The subject property is an irregular-shaped vacant lot that Appellees sought to subdivide and improve with a residential project consisting of four four-story buildings, each having one apartment on the first floor, one on the second floor and one bi-level apartment on the third and fourth floors, for a total of twelve

units. Appellees, through its Developers Yao Chang Huang and Jenny Wan, submitted their proposal to the Department of Licenses and Inspections (L&I). L&I denied the application because the proposed residential use is not permitted in the I-2 Medium Industrial zoning district where the subject property is located, and because the proposal did not provide any on-site parking.[1] Appellees timely appealed to the Board, which conducted a public hearing on September 24, 2013.

At the hearing, Appellees' attorney Glenn Hing testified that the property is irregular in shape, with the property line at the north edge 77 feet in length which decreases to only 45 feet in length at the south property line.[2] September 24, 2013 Hearing, Notes of Testimony (N.T.) at 2-3. Mr. Hing testified that the first and second floor apartments will be approximately 800 square feet, the bi-level apartments will be approximately 1,600 square feet, and that the first floor apartments will have access to back yards, while the upper apartments will have rear decks. *Id.* at 5-6. With respect to the refusal due to lack of on-site parking, Mr. Hing testified that Appellees had entered into a lease agreement with the owner of a nearby parking lot for ten parking spaces to be reserved for the residents' use. *Id.* at 6-7. Mr. Hing submitted a letter of non-opposition from the Philadelphia Chinatown Development Corporation (PCDC), one of two Registered Community Organizations (RCOs), as well as photographs of the subject property and the surrounding area, including a recently built mixed use residential/commercial development directly across the street from the subject

---

[1] Table 14-802-3 of the Philadelphia Zoning Code states that 1 parking space must be provided for every two units.

[2] Although not deduced from testimony at the hearing, the subject property's frontage on Ridge Avenue is approximately 94.42 feet. *See* March 17, 2014 Letter from Appellant to the Board with Appraisal Report for Chosen 300 Ministries, Inc., attached. Certified Record, Item 6.

property. Finally, Mr. Hing explained that most of the recent development in the area has been mixed residential/commercial use projects. *Id.* at 4, 9.

Mr. John Chin, Executive Director of the PCDC, testified that they supported the proposal because it "brings in redevelopment in the area that's been abandoned by former industry and manufacturing" and that his organization sees this as a "very positive trend and it adds to the existing trend of new construction housing that we've seen over the last ten years in the area from the Vine Street Expressway up to Spring Garden Street, and … beyond that." *Id.* at 14. Mr. Chin testified that they envision the area as a strong residential community in the future and that this type of development is especially needed given that there is a high population density in Chinatown and his organization is looking to "improve the quality of life in the neighborhood [while] at the same time creat[ing] more housing and options for young families because that's the demand." *Id.*

Pastor Brian Jenkins of Chosen 300 Ministries, Inc., testified in opposition to the proposal. Pastor Jenkins testified that he currently leases the subject property for use as a parking lot for his volunteers and employees. Pastor Jenkins testified that parking is a "major issue in [the] community" and that Ridge Avenue has "high traffic," and that because parking is not allowed on either side of Ridge Avenue, locating a residential development here with a potential of at least 48 more residents will only endanger pedestrians and worsen the existing parking problem. *Id.* at 17-18. He further testified that, "[a]ll the properties on the 1100 block of Ridge Avenue [where the subject property is located] are actually light industrial." *Id.* at 18. Finally, Pastor Jenkins testified that he specifically located his ministry in the light industrial district because it was the area least likely to be threatening to the homeless community he serves and also to avoid battles with

3

residents who are "not as tolerant to [the] homeless population." *Id.* at 20. Although Pastor Jenkins stated that at least six business owners in the area opposed the project, he was unaware that two of those businesses had met with Appellees and subsequently withdrew their opposition and were now in favor of the proposal. *Id.* at 32-33.

At the end of the hearing, the Board directed Appellees to determine whether two existing curb cuts at the property were legal and to revisit their proposal to include on-site parking, if possible, and held the matter under advisement. Thereafter, Developers updated the plan, reducing the number of buildings from four to three, and consequently reducing the number of units from twelve to nine. The updated plan also addressed the Board's concern with the lack of parking by adding five on-site parking spaces and the existing curb cuts were approved by the City's Highway Department. At a joint public meeting on February 11, 2014 of both RCOs, the PCDC and the Callowhill Neighborhood Association (CNA), the updated plan was presented, where several members of the Chosen 300 Ministry were present and voiced their opposition. Despite the objection of the Chosen 300 Ministries, the CNA indicated that, based on the revised plan, it would have no opposition to the project. Appellant sent an additional letter in opposition to the project dated February 12, 2014. Developers, on behalf of Appellees, then submitted the revised plan to the Board on February 28, 2014. Appellant also submitted a letter with an appraisal report it had solicited and its offer to purchase the subject property, which offer was rejected by Appellees.

After accepting the additional evidence and considering the record as a whole, the Board found that the area where the subject property is located is

4

transitioning from its industrial roots into a more residential area, as shown by the recent mixed residential/commercial developments in the area, including one directly across from the subject property. The Board also found that Appellees proposed residential development was in harmony with the PCDC's future vision for the area as a residential community and that it would bring much needed residential units to the community, which was experiencing a regrowth after being abandoned by former industrial and manufacturing uses. Additionally, the Board found that the conditions that formed the basis for the variance, *i.e.,* the irregular shape of the lot that had been vacant and/or used as a parking lot and the transitioning of the area from industrial to a mix of commercial and residential are unique to the property and that these special conditions or circumstances did not result from the Appellees' actions. Based on the record as a whole, including the revised plans, the Board determined that Appellees satisfied the requirements for a variance as set forth in Section 14-303-(8)(e)(.1) and (.2) of the Philadelphia Zoning Code. Specifically, the Board determined that the proposed use of the subject property is consistent with the area surrounding it; that literal enforcement of the Zoning Code would create an unnecessary hardship to the subject property; that there would be no adverse impact on the public health, safety or general welfare; and that the variance represents the minimum that will afford relief at the least modification possible. Accordingly, the Board granted the variance with proviso.[3]

Appellant appealed to the trial court, which affirmed. The trial court concluded that there was testimony before the Board that while the subject

_____

[3] The proviso was "per revised plans (3 pages) stamped by the ZBA 3/18/14." Board's Decision, Finding of Fact No. 17.

5

property is located in an industrial zoning district, the surrounding area is shifting to residential/commercial mixed use and that the lot's irregular shape makes it unsuited for industrial use and that no new industrial uses have been constructed in the neighborhood. The trial court also concluded that Appellant had not shown how the use variance would substantially or permanently impair the appropriate use or development of adjacent property nor be detrimental to the public welfare. The trial court determined that Appellant's testimony that his homeless ministry would suffer harm if the residential development was allowed was "only potential harm" and not actual harm, and that Appellant made no argument that the proposed development would be detrimental to the public welfare. Trial Court's Opinion at 8. The trial court also determined that Appellant's remaining objection regarding an increase in traffic was unsupported by evidence. The trial court thus affirmed the decision of the Board and dismissed Appellant's appeal.

When, as here, the trial court has taken no additional evidence, this court's review is limited to determining whether the Board's findings are supported by substantial evidence or whether the Board made an error of law in rendering its decision. *Twp. of Exeter v. Zoning Hearing Bd.,* 962 A.2d 653, 659 (Pa. 2009). Section 14-303(8)(e)(.1) of the Zoning Code sets forth specific criteria that the Board must consider in determining whether to grant a variance, which the court has boiled down to three key requirements: the applicant must prove (1) unnecessary hardship unique to the subject property; (2) no adverse effect on the public safety, health, or general welfare; and (3) that the variance is the minimum that will afford relief at the least modification possible. *E. Torresdale Civic Assoc. v. Zoning Bd. of Adjust.,* 639 A.2d 446, 447 (Pa. 1994). We have previously held that, in the context of a use variance, an unnecessary hardship is established by

6

evidence that: the physical features of the property are such that it cannot reasonably be used for a permitted purpose; or that the property can be conformed for a permitted use only at a prohibitive expense; or that the property has no value for any purpose permitted under the zoning code. *See e.g., Hertzberg v. Zoning Bd. of Adjust.,* 721 A.2d 43, 47 (Pa.1998). However, recent Supreme Court precedent has admonished that in establishing a hardship, the applicant "is *not required* to show that the property at issue is valueless without the variance or that the property cannot be used for any permitted purpose." *Marshall v. City of Phila. and Zoning Bd. of Adjust.,* 97 A.3d 323, 330 (Pa. 2014). Nor have we required the applicant/property owner to prove that he or she has been unable to sell the property in order to prove unnecessary hardship. *Id.* While both may be factors to be considered when assessing whether or not unnecessary hardship exists, they are neither the only factors nor the conclusive factors. *Id.*

Appellant's sole issue presented for our review is whether the Board erred as a matter of law in granting the variance. Appellant asserts that there is no evidence of a unique hardship of the subject property and, therefore, the "most fundamental prerequisite for obtaining a variance is entirely absent from the certified record." Appellant's Brief at 13. Appellant avers that Appellees were required to show that the property cannot not be used for a permitted purpose, that the cost of conforming the property for a permitted purpose is prohibitive, or that the property has no value for a permitted purpose, citing *Allegheny West Civic Council, Inc. v. Zoning Board of Adjustment of the City of Pittsburgh,* 689 A.2d 225, 227 (Pa. 1997), cases significantly pre-dating *Marshall.* Specifically, Appellant contends that the fact that it had leased the subject property for use as a parking lot for its volunteers is evidence that the subject property is economically

7

viable and that this undermines Appellees' argument that the subject property's physical characteristics are such that it cannot not be used for a permitted purpose. Appellant further argues that the Board did not even discuss whether other potential uses of the subject property within the I-2 restrictions were considered by Appellees and rejected as prohibitively expensive or whether Appellees had made any attempts to sell the subject property to no avail. Appellant asserts that the Board essentially ignored the fact that none of the criteria for establishing an unnecessary hardship are contained in the record and instead, erroneously focused on the issue of whether Appellees' proposal provided for the requisite parking. Appellant argues that the issue of sufficient parking is superfluous without first establishing proof that a unique hardship exists warranting a variance for a non-permitted use.[4]

We disagree with Appellant, as it has not only misstated governing law, but apparently ignores the fact that the Board did issue findings of fact and conclusions of law regarding unnecessary hardship. Specifically, the Board found that the subject property was "irregular in shape" and in "an area [that] has shifted into residential and mixed residential/commercial uses." Board's Decision, Findings of Fact Nos. 7 and 9. The Board also credited the testimony of John

_____

[4] At oral argument before the trial court and in a one paragraph statement in his brief to this court, Appellant argued that the Board violated the Sunshine Act, 65 Pa. C.S. §§ 701-716, by accepting additional evidence after the public hearing without convening another public hearing at which time the public would have the opportunity to raise any concerns and voice opposition to the revised plan. While the trial court did not address this issue, it appears that Appellant did not include this issue in his statement of matters complained of on appeal, and thus, the issue is waived. *Parker Ave., LP v. City of Phila.,* 122 A.3d 483, 490 n.10 (Pa. Cmwlth. 2015) (when an issue is not included in a 1925(b) statement it is waived). In any event, Appellant was present at the public meeting at which time the Board announced that it was accepting additional information, and indeed, Appellant, as well as Appellees, submitted additional documentary evidence to the Board which was part of the record upon which the Board's decision was based.

8

Chin, Executive Director of the PCDC, that the neighborhood had "been abandoned by former industrial and manufacturing use" and that "[t]he positive trend is towards re-development of this area into residential." *Id.* Finding of Fact No. 10. The Zoning Code specifically states that a finding of unnecessary hardship may be made where "there are unique physical circumstances or conditions (*such as irregularity, narrowness or shallowness of lot size ...*) peculiar to the property . . . ." Section 14-303(8)(e)(.2)(.a) (emphasis added). It is the function of the Board to determine whether the evidence satisfies the criteria for granting a variance and as fact finder, it is the sole judge of credibility. *Marshall,* 97 A.3d at 331. Its discretion is "not so circumscribed" that it cannot "infer" from the record and "its [own] expertise in and knowledge of local conditions," that the Appellees herein have established that there is an unnecessary hardship unique to the subject property. *Id.* at 330, 333 (citation omitted). Moreover, as the Board found, it was not only the irregular shape of the lot that formed the basis of the hardship, but also the lack of industrial development in the neighborhood and the transitioning from industrial to residential that created the hardship. As we noted in *South of South Street Neighborhood Association v. Philadelphia Zoning Board of Adjustment,* 54 A.3d 115, 120 (Pa. Cmwlth. 2012), "a property may once have not been burdened by an unnecessary hardship, the course of time may effect changes to that property and the surrounding area, which may ultimately result in the creation of an unnecessary hardship that did not previously exist." Contrary to Appellant's assertions, Appellees were not required to present evidence that the subject property could not be utilized for its intended uses or whether there were alternative permitted uses under the I-2 zoning restrictions to which the subject property could be utilized for, nor were they required to submit evidence that they

9

attempted to sell the property to no avail. The Supreme Court has "explicitly rejected the requirement that an applicant for a variance . . . eliminate every possible permitted use." *Marshall,* 97 A.3d at 332. Moreover, while evidence of failed attempts to sell the property "may be probative . . . we have concluded that it is 'unreasonable to force a property owner to try to sell his property as a prerequisite to receiving a variance.'" *Id.* at 330 (citation omitted). Finally, we reject as specious the argument that Appellees' ability to use the property as a parking lot precludes a determination of hardship. Under Appellant's theory, virtually any property that is otherwise useless under its current zoning must be denied a variance because a vacant lot can almost always be used to park cars.[5] Accordingly, we conclude that there is substantial evidence to support the Board's determination that the subject property's irregular shape along with the transitioning from industrial to residential/commercial has established unnecessary hardship.

Next, we address Appellant's argument that the Board failed to consider whether the grant of the use variance would "substantially or permanently impair the appropriate use or development of adjacent property, [*i.e.,* his ministry] nor be detrimental to the public welfare" under Section 14-303(8)(e)(.2)(.c) of the Zoning Code. Contending that it was "precisely because of the surrounding industrial uses" that he located his ministry at the adjacent property, and that "residential uses would be incompatible with the lines of homeless persons outside of the building," he has shown that Appellees' proposed residential development

---

[5] In this regard, we note that Appellees were not operating a commercial facility, nor is there any evidence of record that this property was suitable for such a use. Appellees simply let Appellant, their neighbor, park its cars there for a fee.

10

would substantially and/or permanently impair the appropriate use of his property. Appellant's Brief at 19. Appellant further asserts that the "Zoning Code itself recognizes the incompatibility between the activities of a homeless ministry such [as] Chosen 300 and residential uses . . . [because] it restricts [such activities] in many residential zoning classifications" arguing that some of the residential zoning classifications restrict religious assemblies altogether while others only allow religious activities to take place inside, thus prohibiting the kind of ministry he conducts at his property. *Id.* We disagree.

Here, as noted by the trial court, Appellant has presented no evidence that would show that Appellees' proposed residential development would substantially or permanently impair his ministry at the adjacent property, but instead, has cited only "potential harm." Trial Court's Opinion at 8. Where an objector asserts that a proposed use will substantially affect the public health, safety and general welfare, he or she must offer more than just speculation of possible harm, but instead must show a "high degree of probability that the proposed use will substantially affect the health and safety of the community." *In re: Appeal of Thompson,* 896 A.2d 659, 679 (Pa. Cmwlth. 2006). The Board, after finding that the proposed development had the approval of the RCOs and was in harmony with its vision for the neighborhood; that the Planning Commission had no objection; that the curb cuts had been approved by the City's Highway Department; and that the site had been redesigned to include on-site parking, determined that:

> Granting the variance would not (i) substantially or permanently injure the appropriate use of adjacent conforming properties; (ii) substantially increase congestion in the public streets; (iii) increase the danger of fire, or otherwise endanger the public safety; (iv)

11

overcrowd the land or create an undue concentration of population; (v) impair an adequate supply of light and air to adjacent property; or (vi) adversely affect transportation or unduly burden water, sewer, school, park or other public facilities.

Board's Decision, Conclusion of Law No. 12. These findings were supported by substantial evidence.

For all the above reasons, the grant of the variance was proper under the Zoning Code. *N. Chestnut Hill Neighbors v. Zoning Bd. of Adjust.,* 977 A.2d 1196, 1203 (Pa. Cmwlth. 2009). Accordingly, we affirm.

 

 

_____
**BONNIE BRIGANCE LEADBETTER,**
Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Chosen 300 Ministries, Inc.,       :
                         Appellant   :
      :

            v.       :    No. 67 C.D. 2015
      :

City of Philadelphia Zoning Board of   :
Adjustment                    :

## O R D E R

AND NOW, this 19th day of January, 2016, the order of the Court of Common Pleas of Philadelphia County in the above-captioned matter is hereby AFFIRMED.

_____
**BONNIE BRIGANCE LEADBETTER,**
Judge